754 So.2d 304 (2000)
STATE of Louisiana
v.
Carlos HARRIS.
No. 99 KA 0820.
Court of Appeal of Louisiana, First Circuit.
February 18, 2000.
*305 Walter P. Reed, District Attorney, Dorothy Pendergrast, Assistant District Attorney, Baton Rouge, for Appellee State of Louisiana.
Frank Sloan, Covington, for Defendant-Appellant Carlos Harris.
Before: CARTER, LeBLANC, and PETTIGREW, JJ.
PETTIGREW, J.
Defendant, Carlos Harris, was charged by a bill of information with obscenity, a violation of La. R.S. 14:106. He pled not guilty. On the day of trial, defendant changed his plea to not guilty and not guilty by reason of insanity. A trial was conducted and after deliberation, the jury returned the verdict of guilty as charged. The trial court ordered a pre-sentence investigation report. Defendant filed a motion for new trial and a motion for post-verdict judgment of acquittal, which were denied. The trial court sentenced defendant to five years imprisonment at hard labor, without benefit of parole, probation, *306 or suspension of sentence. Defendant filed a motion to reconsider sentence, which was denied by the trial judge. Defendant now appeals.

FACTS
Darlene Williams, a St. Tammany Parish bus driver, testified that on March 20, 1997, she drove her usual afternoon bus route. As she dropped off some children directly across from the defendant's camper-trailer, she saw defendant standing in the open doorway of his trailer, naked from the waist down, shaking his penis toward the driver and the children on the bus. The defendant's tongue was also hanging outside of his mouth. Ms. Williams made certain that the children she had dropped off had walked up the driveway to their home before she drove away. According to Ms. Williams, the bus contained about 28 children ranging from kindergarten through eighth grade. Ms. Williams, who had no doubt about her identification of defendant in court, stated that the children also witnessed the actions of the defendant. After completing her route, Ms. Williams reported the incident to the parish school board and to the sheriff's office. She was advised by school board personnel that some parents had already called and made complaints about the defendant's actions.
Sergeant Russell Kahl, a St. Tammany Parish Sheriffs Office deputy, testified that on the date in question, he responded to Ms. Williams's complaint. After interviewing Ms. Williams, Sergeant Kahl called for backup and went to the defendant's trailer where the defendant was placed under arrest. When Sergeant Kahl arrived at the trailer, the defendant was dressed in shorts and a shirt. Sergeant Kahl estimated that the defendant's trailer was situated no more than 25 feet from the road, and agreed that there was a clear, unobstructed view from the road to the trailer. Sergeant Kahl testified that he was with the defendant for at least 1½ hours, and that during that time, the defendant appeared very calm, and was able to understand and answer questions. The defendant did not appear to be insane.
Deputy Terry Kennedy testified that he also participated in the arrest of the defendant and that he read the defendant his Miranda rights. According to Deputy Kennedy, the defendant appeared to have his mental faculties about him when he advised Deputy Kennedy that he understood his rights. Deputy Kennedy also stated that the defendant was clothed and had a calm demeanor at the time of his arrest.
Dr. Rafael Salcedo testified on the defendant's behalf, as an expert in the field of forensic psychology. He stated that he had been appointed by the court to serve as a member of a sanity commission called to determine the defendant's competency for trial. Dr. Salcedo stated that his original examination of the defendant took place in May of 1997 when defendant was in an isolation cell at the St. Tammany Parish Jail. At that time defendant was "stark naked .... [and] rambling, talking to himself at an extremely rapid pace of speech." In Dr. Salcedo's opinion, it was clear that the defendant was "actively delusional and psychotic, floridly so in a very dramatic way." The defendant's condition was obvious to the other members of the sanity commission as well and, consequently, the court found the defendant incompetent to proceed to trial. The defendant was transferred to Feliciana Forensic Facility where he was treated with anti-psychotic medication.
Dr. Salcedo saw the defendant again on July 8, 1998. Describing the defendant as a "good medication responder," Dr. Salcedo noted that "like many chronically mentally ill individuals suffering from schizophrenia,... [the defendant] lacks insight into the fact that he's mentally ill." In Dr. Salcedo's opinion, the defendant's "response is remarkable in that he recovers well when he's taking his medications." Dr. Salcedo stated that while the defendant still presented some psychotic symptoms, *307 he was greatly improved and lucid enough to understand the nature of the charges against him. At that point, Dr. Salcedo stated that he recommended to the court that the defendant be found competent to proceed to trial.
Dr. Salcedo testified that because he had been able to observe what happens when the defendant does not take his medication, there was a "pretty good chance that at the time of the alleged offense, [the defendant] was not taking his medications and was probably psychotic." While the defendant purportedly told Dr. Salcedo that he was not taking his medications at the time of the alleged offense, Dr. Salcedo conceded that he had no way to verify this claim. If the defendant was not taking his medications, Dr. Salcedo stated that he had little doubt that the defendant would have met the criteria for insanity and would not be able to distinguish right from wrong.
Dr. Salcedo was also asked if the defendant's alleged act of obscenity was consistent with the defendant's behavior when not on medication. Based upon his review of the defendant's numerous psychiatric hospitalizations, Dr. Salcedo stated that it appeared to be part of the defendant's symptomatology to strip naked and become very confused about his sexuality. Dr. Salcedo could not explain how the defendant could purportedly not know the difference between right and wrong while appearing calm to the deputies who arrested him. Recalling that when he first saw the defendant in jail, the defendant would not calm down, Dr. Salcedo could only surmise that the "presence of two deputies and the flashing lights might have been sufficient to maybe spook" the defendant into calming down. Dr. Salcedo further stated that while it was conceivable that the defendant possessed some degree of control when something really dramatic is happening, this did not negate the possibility or the likelihood that the defendant was actively psychotic. In his testimony, Dr. Salcedo also indicated that the defendant's behavior in stopping his medication was consistent with what is typically seen in chronic schizophrenics. Dr. Salcedo further opined that in his opinion, the defendant was not malingering. On cross-examination, Dr. Salcedo conceded that his first examination of the defendant did not take place until two months after the incident.
The defendant also presented the testimony of lay witnesses. Captain Gregory Longino, the assistant warden of the St. Tammany Parish Jail, testified that he personally observed the defendant's strange behavior. While in an isolation cell, the defendant usually remained naked and masturbated. Captain Longino related that on one occasion, he observed the defendant with a lighter in his cell. When Captain Longino asked the defendant to release the lighter to him, the defendant refused and stuck the lighter into his anal cavity. Captain Longino also testified that the defendant screamed and yelled most of the day and throughout the night. Captain Longino agreed that he personally observed an incident when the defendant spread his feces on the wall. Captain Longino could not say whether the defendant was on medication when this behavior occurred. Captain Longino further testified that to stop the defendant from acting out, the guards would use pepper spray or an electronic shield to make the defendant comply or simply close his door.
St. Tammany Parish Sheriffs Office Lieutenant James Bennett testified that he had known the defendant since grammar school. In junior high school, the defendant was "on the wild side with drugs." Lieutenant Bennett also testified that while in jail, he observed the defendant strip naked, holler, scream and masturbate on a daily basis. According to Lieutenant Bennett, the defendant has also "been known to rub feces on the wall and throw it."
In rebuttal, the State presented the testimony of Dr. Jay Pennington, who was accepted as an expert in forensic psychiatry. Dr. Pennington is a staff psychiatrist *308 who treated the defendant at Feliciana Forensic Facility. Dr. Pennington stated that the defendant's medical records indicated that at one time, part of the defendant's problem stemmed from his use of illegal drugs, including marijuana, speed, PCP, and LSD. Although he was one of the doctors who examined the defendant in July of 1997 to determine his competency for trial, Dr. Pennington did not focus on the defendant's mental state at the time of the alleged offense.
When asked about the effects of using PCP, Dr. Pennington stated that the results cannot be totally predicted. According to Dr. Pennington, the use of drugs such as LSD and PCP often "presents a picture much like a psychotic individual." The use of PCP can make people do "inappropriate things," affect their ability to make good judgments, and make them hallucinate. Dr. Pennington also indicated that several of his patients who used PCP would "disrobe quite frequently and become somewhat exhibitionists [sic]."
Later, upon cross-examination by defense counsel, Dr. Pennington conceded that he had no knowledge that the defendant had acquired PCP in jail. Dr. Pennington agreed that the defendant is a long-term schizophrenic, who, when admitted to Feliciana Forensic Facility, was floridly psychotic. Dr. Pennington acknowledged that drug use would not have caused the defendant's schizophrenia, but he explained that people who have taken LSD can act psychotic as a result of flashbacks.

SUFFICIENCY OF THE EVIDENCE
In his first assignment of error, the defendant argues that the evidence did not support the guilty verdict. The defendant claims that the evidence shows that there is no rational basis for the jury to conclude that he knew right from wrong at the time that he exposed himself to the children on the school bus. The State contends that the defendant did not establish the defense of insanity by a preponderance of the evidence. The State argues that the only issue is whether there was evidence of the specific intent element. It further argues that the jury was free to accept or reject the defendant's theory that he was not taking his medication at the time of the offense and as a result was psychotic and unable to distinguish between right and wrong.
The law presumes a defendant is sane and responsible for his actions. La. R.S. 15:432. The defendant has the burden of establishing the defense of insanity at the time of the offense by a preponderance of the evidence. La.Code Crim. P. art. 652. The State is not required to offer any proof of the defendant's sanity or to offer evidence to rebut the defendant's evidence. Instead, the determination of whether the defendant's evidence successfully rebuts the presumption of sanity is made by the trier of fact viewing all the evidence, including lay and expert testimony, the conduct of the defendant, and the defendant's actions in committing the particular crime. The issue of insanity is a factual question for the judge or jury to decide. Lay testimony concerning the defendant's actions, both before and after the crime, may provide the fact-finder with a rational basis for rejecting even unanimous medical opinion that the defendant was legally insane at the time of the offense. State v. Thames, 95-2105, pp. 8-9 (La.App. 1 Cir. 9/27/96), 681 So.2d 480, 486-487, writ denied, 96-2563 (La.3/21/97), 691 So.2d 80.
In reviewing a claim of sufficiency of evidence in regard to a defense of insanity, we must apply the test set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), to determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the defendant had not proven by a preponderance of the evidence that he was insane at the time of the offense. State v. Peters, 94-0283, p. 8 (La.10/17/94), 643 So.2d 1222, 1225.
*309 The defendant presented the expert testimony of Dr. Salcedo, a psychologist on the sanity commission who examined him at the request of the court. Dr. Salcedo's first examination of the defendant took place approximately two months after the alleged offense. Based upon the recommendation of Dr. Salcedo and Dr. Pratt, the other member of the sanity commission, the defendant was found incompetent to proceed to trial. Over a year later, and after being treated with anti-psychotic medication, the defendant was found competent to proceed to trial. At trial, Dr. Salcedo testified that on the date of the offense, it was more likely than not that the defendant was in a psychotic state due to his schizophrenia. Dr. Salcedo further stated that without medication, the defendant would not be able to distinguish between right and wrong. Dr. Salcedo also stated that the defendant's alleged act of exposing his genitals was consistent with not taking medication. The doctor also referred to prior medical records that revealed the defendant's symptoms included stripping naked and being confused about his sexuality. However, Dr. Salcedo could not explain the defendant's calm demeanor in the presence of the arresting officers.
The State presented the expert testimony of Dr. Pennington, who was the staff psychiatrist who treated the defendant during his confinement at Feliciana Forensic Facility. Dr. Pennington testified that the defendant's past medical records indicated that the defendant had previously used illegal, hallucinogenic drugs. The doctor further stated that he had patients who would disrobe and become exhibitionists while using PCP, but he conceded that drug use would not cause the defendant's schizophrenia. However, Dr. Pennington further testified that LSD flashbacks could cause a person to act psychotic.
The defendant's lay witnesses included Captain Longino and Lieutenant Bennett who observed the defendant while he was in jail. They both described strange behavior, including yelling and screaming in his cell.
The State presented the testimony of the arresting officers who indicated that the defendant was calm when they went to arrest him after the alleged incident. According to the officers, the defendant was fully clothed, appeared able to understand and answer questions, and was not acting strangely.
Based on these facts, we find that a rational trier of fact could have found the defendant failed to rebut the presumption of sanity by a preponderance of the evidence. Dr. Salcedo's opinion was countered by Dr. Pennington's testimony that the use of hallucinogenic drugs could have been the source of the defendant's behavior, rather than his schizophrenia. Additionally, Dr. Salcedo did not examine defendant until two months after the incident. The arresting officers who saw the defendant shortly after the incident indicated that he was not presenting psychotic behavior.
After reviewing all the evidence, we conclude the jury did not err in finding the defendant guilty and not accepting his insanity defense. Although the defendant's expert, Dr. Salcedo, concluded that the defendant could not distinguish between right and wrong at the time of the offense, the jury obviously rejected this opinion. In light of the evidence presented, we conclude that any rational trier of fact could have found that the defendant failed to prove by a preponderance of the evidence that he was insane at the time of the offense. For these reasons, this assignment of error lacks merit.

SENTENCING
In assignment of error number two, the defendant contends that the trial court erred in imposing a sentence that exceeds the maximum allowed under the statute. The defendant argues that the term of imprisonment was more than that provided for in the penalty provision of a first obscenity conviction. The State argues *310 that since the defendant exposed himself to kindergarten through eighth grade children, he was properly sentenced under La. R.S. 14:106 G(4), which provides for a greater penalty when the offense is committed with or in the presence of an unmarried person under the age of seventeen years.
Essentially, the question here is which penalty provision of the obscenity statute should be used for sentencing the defendant. Louisiana Revised Statute 14:106 provides in pertinent part:
A. The crime of obscenity is the intentional:
(1) Exposure of the genitals, pubic hair, anus, vulva, or female breast nipples in any public place or place open to the public view with the intent of arousing sexual desire or which appeals to prurient interest or is patently offensive.
. . . .
G. (1) On a first conviction, whoever commits the crime of obscenity shall be fined not less than one thousand dollars nor more than two thousand five hundred dollars, or imprisoned, with or without hard labor, for not less than six months nor more than three years, or both.
. . . .
(4) When a violation of Paragraph (1), (2), or (3) of Subsection A of this Section is with or in the presence of an unmarried person under the age of seventeen years, the offender shall be fined not more than ten thousand dollars and shall be imprisoned, with or without hard labor, for not less than two years nor more than five years, without benefit of parole, probation, or suspension of sentence.
In reviewing this matter, we have discovered several fatal flaws that lead us to conclude that the defendant's sentencing under La. R.S. 14:106 G(4) was erroneous. First, the bill of information in this matter did not specifically allege that the violation was "with or in the presence of an unmarried person under the age of seventeen years." The bill of information stated that the defendant was charged with obscenity "by the intentional exposure of his penis, in any public place or place open to public view with the intent of arousing sexual desire or which appeals to the purient [sic] interest and is patently offensive." This specific allegation is consistent with the definition in Subsection A(1) of the obscenity statute, but does not refer to the age(s) of the victim(s).
Second, a review of the jury charges in this case reveals that there was not a specific instruction regarding a finding that the offense was committed with or in the presence of an unmarried person under the age of seventeen. The jury charges simply included an instruction on Subsection A(1).
Finally, the element of the age(s) of the victim(s) was not included in the verdict form. This omission did not allow the jury an opportunity to express a finding of guilt either with or without the element that the act was committed with or in the presence of an unmarried person under the age of seventeen.
At the time of sentencing, the trial court did not state under which penalty provision defendant was being sentenced. However, given the judge's comments about the victims and that there was no allegation or proof that this conviction was not the defendant's first, the defendant was obviously sentenced by the trial court under Subsection G(4), which provides for a more severe penalty.
In State v. Lecompte, 98-1159 (La.App. 1 Cir. 4/01/99), 734 So.2d 83, we found that the defendant's sentencing for a conviction of molestation of a juvenile, under the more severe penalty provision, was erroneous. The recurring acts element, required for the more severe penalty, had not been specifically alleged in the bill of information or included in the jury charge. Nor did the verdict form include a means by which the jury could find guilt with or *311 without this element. We found that such omissions were fatal, vacated the sentence, and remanded.
In Lecompte, we stated:
Article I, § 13 of the Louisiana Constitution provides that an accused in a criminal prosecution has a right to be informed of the nature and cause of the accusation against him. Concomitantly, the Louisiana Code of Criminal Procedure requires that the indictment be a plain, concise, and definite written statement of the essential facts constituting the offense charged. LSA-C.Cr.P. art. 464. The indictment must contain all of the essential elements of the crime intended to be charged in sufficient particularity to enable the defendant to prepare for trial, to allow the court to determine the propriety of the evidence that is submitted at the trial, to allow the court to impose the correct punishment on a verdict of guilty, and finally to afford the defendant protection from prosecutions for the same offense. State v. Comeaux, 408 So.2d 1099 (La. 1981).
The more than one year recurring acts element is an essential element of the offense of molestation of a juvenile under Subsection D. Cf. State v. Mobley, 592 So.2d 1282 (La.1992) (whether the predicate convictions in a multiple offender DWI prosecution are considered essential elements of the offense or essential averments of the bill of information, the state bears the burden of proving the convictions at trial); State v. Krause, 405 So.2d 832 (La.1981) (where an accused is charged as a second DWI offender, the bill of information or indictment must allege the prior conviction). As such, this element should have been specifically listed in the bill of information, the jury charge, and the verdict form. Since, in this case, it was not listed in the bill of information, the jury charge, or the verdict form; the defendant's conviction on Count 1 is valid under Subsection A only.
State v. LeCompte, 98-1159 at 9, 734 So.2d at 88.

CONCLUSION
For the above and foregoing reasons, we affirm the defendant's conviction. However, we find that the defendant was erroneously sentenced under La. R.S. 14:106 G(4), the more severe penalty provision. Accordingly, said sentence must be vacated and the defendant resentenced under La. R.S. 14:106 G(1).
CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED FOR RESENTENCING.