846 So.2d 22 (2003)
STATE of Louisiana
v.
John WILLIAMS.
No. 02-KA-1188.
Court of Appeal of Louisiana, Fifth Circuit.
April 8, 2003.
*25 Margaret S. Sollars, Louisiana Appellate Project, Thibodaux, LA, Robert G. Rivard, New Orleans, LA, for Appellant.
Harry J. Morel, Jr., District Attorney, Juan A. Byrd, Assistant District Attorney, Hahnville, LA, for Appellee.
*26 Panel composed of Judges JAMES L. CANNELLA, THOMAS F. DALEY and SUSAN M. CHEHARDY.
JAMES L. CANNELLA, Judge.
The Defendant, John Williams, appeals from his conviction of the offense of obscenity and his sentence, as a second felony offender, to seven years imprisonment at hard labor. For the reasons which follow, we affirm the conviction, vacate the finding as a habitual offender and enhanced sentence, and remand.
On October 2, 2001, the St. Charles Parish Sheriff's Office filed a bill of information charging the Defendant with obscenity by exposing his genitals to H.C., a juvenile, under La. R.S. 14:106. On May 8, 2002, the State amended the bill of information to specify that the victim was under the age of 17 and that the crime was under La. R.S. 14:106(G)(4). On May 10, 2002, the Defendant filed a motion to suppress the identification. The motion was heard and denied on May 21, 2002. Trial thereafter commenced.
At trial, H.C. testified that on April 9, 2001 she was 13 years old. At 4:30 P.M., she was walking home from a friend's house along Highway 631 in Des Allemands. A white sports utility vehicle (SUV), possibly a Chevrolet Suburban, passed her "a couple of times." At first, she did not pay attention to it. The driver, a black male, pulled into a driveway, turned the vehicle around, and stopped next to her. H.C. was on the passenger side of the vehicle.
The driver rolled down the vehicle window closest to H.C. and asked her for directions to a playground. H.C. approached the vehicle, intending to give the driver directions. She looked down and saw that the man's penis was exposed and that he had his hand on it. When she realized what she saw, she walked away.
H.C. went directly to her home and told her sister what had happened. Their mother was not at home, so the girls telephoned her and reported the incident. They then called the police. Two officers went to H.C.'s house and took her complaint. H.C. gave the officers a description of the perpetrator and his vehicle. She did not remember what the perpetrator was wearing or any distinguishing features except that he was "pretty much" bald.
On April 18, 2001, H.C. and her mother went to the St. Charles Parish Sheriff's Office at the request of Detective Jo Terluin, to look at books of "mug shots." H.C. looked through three books. She picked out two photographs of the Defendant, one in the first book and one in the third book, and identified him as the man who had exposed himself. She did not pick out any other pictures. H.C. also identified the Defendant at trial.
Detective Terluin testified that, following an interview with the Defendant, while walking outside with him, she noticed that he came in a vehicle that matched the description of the vehicle involved in the incident.
A defense witness, Halisha Hunter (Halisha), the Defendant's live-in girlfriend and the mother of his children, testified that she owns a white SUV. However, she testified that the Defendant did not have access to the vehicle on April 9, 2001. She testified that she and the Defendant had gotten into a fight on April 3rd and he did not come back until the 15th or 16th. She was certain that she and her sister used the vehicle the entire day on April 9th. A second witness, Laqueena Hunter (Laqueena), Halisha's sister, testified that she was with Halisha on April 9, 2001. Laqueena stated that she and her sister had Halisha's vehicle the entire day. On cross *27 examination, it was noted that neither Halisha nor Laqueena could remember what they did on the days near the 9th, although they could remember exactly what they did on that day.
Following trial, the jury found the Defendant guilty as charged. On June 3, 2002, the State filed a habitual offender bill of information, alleging that the Defendant was a second felony offender. On June 20, 2002, the Defendant was arraigned on the habitual offender bill of information and denied the State's allegations.
On August 8, 2002, the habitual offender bill of information was amended to change the trial court case number of the alleged predicate felony. On that day, the Defendant admitted to the allegations in the habitual offender bill of information. The trial court imposed an enhanced sentence of seven years imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. It is from this conviction and enhanced sentence that the Defendant appeals. On appeal, the Defendant assigns three errors in a brief filed by the Louisiana Appellate Project and four errors in a supplemental brief filed with leave of court by retained counsel.[1]
ASSIGNMENT OF ERROR NUMBER ONE
The Defendant complains that the trial court erred in denying his challenges for cause as to prospective jurors Dianne Boudoin (Boudoin), Amy Barattini (Barattini),[2] Lolena Jaramillo (Jaramillo), and William Dempsey (Dempsey). The Defendant then used peremptory challenges on the latter three prospective jurors, causing him to exhaust his challenges.[3]
Defense counsel asked that the jurors be excused because they could not follow the law and were incapable of giving the Defendant a fair trial.[4]
The grounds upon which a juror may be challenged for cause, as set forth in La. C.Cr.P. art. 797, are 1) the juror lacks legal qualifications; 2) the juror is not impartial; 3) there is a relationship between the juror and a witness, victim, or other party associated with the case such that it would be reasonable to conclude that it would influence the juror; 4) the juror will not accept the law as given him by the court; or 5) the juror sat on the grand jury that issued the indictment.
A challenge for cause should be granted, even when a prospective juror declares his or her ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice or inability to render judgment according to law may be reasonably implied. State v. Allen, 95-1754, p. 14 (La.9/5/96), 682 So.2d 713, 724; State v. Richthofen, 01-500, p. 30 *28 (La.App. 5th Cir.11/27/01), 803 So.2d 171, 190. The trial judge is afforded great discretion in determining whether cause has been shown to reject a prospective juror and such determinations will not be disturbed on appeal unless a review of the voir dire as a whole indicates an abuse of that discretion. State v. Anthony, 98-0406, p. 22 (La.4/11/00), 776 So.2d 376, 391, cert. denied, 531 U.S. 934, 121 S.Ct. 320, 148 L.Ed.2d 258 (2000); State v. Anderson, 99-456, p. 7 (La.App. 5th Cir.10/26/99), 750 So.2d 1008, 1013, writ denied, 99-3332 (La.5/5/00), 761 So.2d 541.
To prove error warranting reversal of both the conviction and sentence, a defendant need only show that he exhausted all of his peremptory challenges and that the trial judge erroneously denied a cause challenge. State v. Connolly, 96-1680, pp. 6-7 (La.7/1/97), 700 So.2d 810, 816; State v. Paul, 99-92, p. 3 (La.App. 5th Cir.5/19/99), 738 So.2d 1128, 1129.
Here, the record shows that the Defendant used all of his peremptory challenges. Thus, the Court must determine whether the trial court abused its discretion by denying the Defendant's challenges for cause.
First, the Defendant objects to the denial of his challenge for cause as to Boudoin. In reviewing the record, we note that the Defendant did not use a peremptory challenge to excuse this prospective juror, nor did this juror sit on the jury. As counsel were going through their peremptory challenges, with the State going first, when Boudoin's name came up as the fourth prospective juror, she was struck with a peremptory challenge by the State. At this point in the proceedings the defense had four peremptory challenges remaining. Accordingly, we can find no prejudice suffered by the Defendant because of any alleged error in the trial court ruling on the challenge for cause and find that any objection to the trial court's ruling is moot.
Nevertheless, for completeness of the record, we note that, in challenging Boudoin, defense counsel gave the following reasons, "She works in the sheriff's office. She doesn't understand a hundred percent the right of a witness to not testify. She would testify against the advice of her lawyer. That says to me she cannot be impartial." The trial judge denied the challenge for cause.
Upon review, we find that, while Boudoin began by saying that she would give more credibility to a police officer's testimony, when the trial judge explained the law to her, she indicated that she understood that a juror is required to be impartial and said that she was capable of giving equal weight to the testimony of all witnesses.
Concerning the issue of her understanding the right against self-incrimination, Boudoin was not asked how she would act as a juror. She was only asked to comment on whether she herself would testify if she were a defendant. She did not express an opinion regarding how her decision as a juror might be effected if the Defendant chose not to testify at trial. Therefore, we find no error in the trial court's ruling denying the defense challenge for cause as to Boudoin.
Next, the Defendant challenged prospective juror Dempsey for cause, because he stated that he would always be right if he had to make a one-on-one identification and because he said that he would testify against his lawyer's advice. The trial court denied the challenge.
We find no error in this ruling. First, defense counsel was mistaken concerning Dempsey's understanding of the right not to testify. He said he would follow his *29 attorney's advice. Further, Dempsey did not indicate that he could not or would not, as a juror, follow the law regarding identification evidence.
The Defendant challenged prospective juror Jaramillo for cause on the grounds that she stated that if she was a defendant she would testify on her own behalf even against her lawyer's advice if she thought it would benefit her. The trial court denied the challenge for cause.
Upon review, we find no error in the trial court's ruling. Jaramillo demonstrated that she understood a defendant's right against self-incrimination, and that even those who are innocent of a crime may choose to exercise the right. Her statement that she thought that she personally would not choose to exercise that right did not mean that she would not follow the law as she was charged as a juror or that she would be impartial to a defendant who did not testify.
The Defendant challenged prospective juror Barattini for cause, arguing to the trial court that, "She said that she would take the witness, the testimony of a young woman more into consideration than a regular person." The prosecutor responded, "That is not what she said. She was asked if she could, yeah, it could affect her, but she said when questioned earlier whether or not if we did not prove our cause, could she find for not guilty, and she said that she could." The trial judge denied the challenge for cause.
We find no error in the denial of this challenge for cause. While Barattini expressed possible uncertainty as to whether she would be affected by a young female witness because she had a daughter, her responses as a whole showed that she was prepared to follow the law, and to require the State to prove its case beyond a reasonable doubt.
Moreover, reviewing the entire voir dire, we find that the jurors' responses as a whole did not reveal any bias, prejudice, or inability to render judgment according to law. This assignment of error has no merit.
ASSIGNMENT OF ERROR NUMBER TWO
The Defendant argues that the evidence produced against him at trial was insufficient to support his conviction. More particularly, he contends that the State failed to prove his identity as the perpetrator. The Defendant argues that H.C.'s identification was unreliable because she only saw the perpetrator briefly at the time of the offense and because she may have simply remembered his face because they lived in the same neighborhood.
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Juluke, 98-0341 (La.1/8/99), 725 So.2d 1291; State v. Williams, 99-223 (La.App. 5th Cir.6/30/99), 742 So.2d 604. In addition to proving the statutory elements of the charged offense at trial, the state is required to prove the identity of the perpetrator. State v. Williams, 02-645 (La.App. 5th Cir.11/26/02), 833 So.2d 497.
When identity is an issue, the State must negate any reasonable probability of misidentification. State v. Robinson, 02-530 (La.App. 5th Cir.10/29/02), 831 So.2d 460. The trier of fact shall evaluate the witnesses' credibility, and when faced with a conflict in testimony, is free to accept or reject, in whole or in part, the testimony of *30 any witness. State v. Rivers, 01-1251, p. 6 (La.App. 5th Cir.4/10/02), 817 So.2d 216, 219, writ denied, 02-1156 (La.11/22/02), 829 So.2d 1035. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness' testimony, if believed by the trier of fact, is sufficient support for the requisite factual findings. Rivers, 01-1251 at pp. 6-7, 817 So.2d at 219
Defendant was convicted of obscenity under La. R.S. 14:106(G)(4), which provides, in pertinent part:
A. The crime of obscenity is the intentional:
(1) Exposure of the genitals, pubic hair, anus, vulva, or female breast nipples in any public place or place open to the public view, or in any prison or jail, with the intent of arousing sexual desire or which appeals to prurient interest or is patently offensive.
. . . .
G. (4) When a violation of Paragraph (1), (2) or (3) of Subsection A of this Section is with or in the presence of an unmarried person under the age of seventeen years, the offender shall be fined not more than ten thousand dollars and shall be imprisoned, with or without hard labor, for not less than two years nor more than five years, without benefit of parole, probation, or suspension of sentence.
The Defendant concedes in his brief that the evidence at trial showed that H.C. was stopped by an individual who then exposed himself to her. His sole argument is that the State failed to prove that he was the perpetrator.
H.C. testified that when she approached the perpetrator's vehicle, she saw his face. She looked at him only briefly. She looked away when she realized what he was doing. She had seen him pass by several times prior to him stopping. H.C. was questioned at trial about her testimony at the suppression hearing that she only looked at the perpetrator for three seconds. She responded that she recalled that testimony, but that three seconds was only an estimate. She had really seen the perpetrator's face for a longer period of time.
The Defendant argues that H.C. gave a sketchy description of the perpetrator to police following the incident, indicating that she did not get a good look at him. H.C. told Detective Terluin that the Defendant was driving a white, four-door SUV. It was not a new model, but was in good condition. H.C. described the perpetrator as a black male with short or shaven hair, full lips, a broad nose, and dark skin. Detective Terluin testified that she did not think H.C. gave a clothing description.
H.C. had no trouble identifying the Defendant as the perpetrator. On April 18, 2001, she looked at mug shot books at the sheriff's office. H.C. was in a room with only her mother, and did not receive any prompting from others. Without hesitation, she selected two photographs of the Defendant, one from the first book and one from the third book, identifying him as the man who had exposed himself to her. H.C. also identified the Defendant in court. She further testified that she did not believe she was mistaken in her identification and that she could tell by looking at him in court that the Defendant was the man who had exposed himself.
Detective Terluin testified that, after the Defendant became a suspect, she asked him to come voluntarily to her office. The Defendant complied. While the Defendant was leaving, Detective Terluin said that she saw him getting into a white, 1995 SUV, in good condition, which matched H.C.'s description.
*31 Halisha testified that she owns a white SUV, but that the Defendant did not have access to it on April 9, 2001. She further testified that she and her sister used the vehicle all day, getting her nails done. Laqueena corroborated Halisha's testimony, stating that she was with Halisha on April 9, 2001 and that the two of them used Halisha's vehicle. Laqueena further testified that the Defendant did not use the vehicle that afternoon.
The Defendant argues that the testimony of Halisha and Laqueena was sufficient to refute H.C.'s identification. We disagree. It is apparent from the verdict that the jury found H.C. to be more credible. Halisha was the Defendant's girlfriend and the mother of his children. She had an interest in having the Defendant support those children. Moreover, on cross examination their credibility was called into question when they were able to recall all the events of April 9, 2001, but were unable to say what they had done on April 10, 11 or 12.
Based on the foregoing, we find that the State provided sufficient proof of identity to satisfy the Jackson standard. This assignment of error has no merit.
ASSIGNMENT OF ERROR NUMBER THREE
The Defendant complains that his admission to the allegations in the habitual offender bill of information is invalid because the trial court failed to inform him of his right to remain silent.
In a habitual offender proceeding, a trial court must advise a defendant of his right to remain silent, and of his right to a hearing, at which the state is required to prove the allegations in the habitual offender bill of information. La. R.S. 15:529.1 D(1)(a); State v. Johnson, 432 So.2d 815, 817 (La.1983); State v. Jones, 99-972, p. 7 (La.App. 5th Cir.2/29/00), 757 So.2d 110, 114, writ denied, 00-1186 (La.9/21/01), 797 So.2d 58.
The State concedes that the Defendant was not advised of his right to remain silent before his admission to the habitual bill of information was accepted. The failure of the trial court and/or defense counsel to advise a defendant of these rights before he enters an admission to the habitual offender bill is reversible error. State v. Crane, 00-1373, p. 6 (La. App. 5th Cir.3/14/01), 783 So.2d 448, 451. Accordingly, we vacate the trial court's habitual offender finding, sentence and remand the case to the district court.
ASSIGNMENT OF ERROR NUMBER FOUR
The Defendant adopts the sufficiency of the evidence argument presented by his former counsel.[5] He further argues that the State did not provide sufficient evidence to support a conviction, as it did not prove one of the required elements, that the victim was unmarried. La.R.S. 14:106(G)(4).
As discussed above, the constitutional standard for testing the sufficiency of the evidence, enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. When circumstantial evidence is used to prove the commission of the offense, La. R.S. 15:438 requires that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." *32 This statutory test works with the Jackson constitutional sufficiency test to evaluate whether all evidence, direct and circumstantial, is sufficient to prove guilt beyond a reasonable doubt to a rational jury. State v. Neal, 00-0674 (La.6/29/01), 796 So.2d 649.
Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Williams, 99-223 (La.App. 5th Cir.6/30/99), 742 So.2d 604. When circumstantial evidence is used to prove a case, the trial judge must instruct the jury that, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. R.S. 15:438.[6]
The Defendant is correct in his observation that there was no direct evidence at trial that H.C. was unmarried. However, the circumstantial evidence provides adequate proof. H.C. testified at trial that, at the time of the offense, she was 13 years old and a student at a middle school. She further testified that, after the incident occurred, she went directly home. Her mother was not there, so she enlisted the help of her sister to telephone her mother, and the police, not her husband. H.C. lived with her mother and sister and no husband was mentioned. When H.C. went to the sheriff's office to view mug shots, her mother, not her husband, accompanied her. It can be reasonably inferred from the above that H.C. was not married. Thus, we find that the circumstantial evidence at trial was sufficient to prove, under the Jackson criteria, the "unmarried" element of the charged offense. This assignment of error lacks merit.
ASSIGNMENT OF ERROR NUMBER FIVE
The Defendant complains that the bill of information was defective, because it did not give him sufficient notice of the crime with which he was charged. Specifically, he argues that the bill failed to fully track the language of La. R.S. 14:106(G)(4), as it did not allege that the victim was "an unmarried person."
The issue is not properly before this Court, because the Defendant failed to raise it below. The time for testing the sufficiency of an indictment or bill of information is before trial by way of a motion to quash or an application for a bill of particulars. State v. Johnson, 02-254, p. 4 (La.App. 5th Cir.6/26/02), 822 So.2d 840, 842; State v. Noil, 01-521, p. 19 (La.App. 5th Cir.12/26/01), 807 So.2d 295, writ denied, 02-0276 (La.10/25/02), 827 So.2d 1177. A post-verdict attack on the sufficiency of an indictment should be rejected unless the indictment failed to give fair notice of the offense charged or failed to set forth any identifiable offense. State v. Noil, supra.
In this case, we find that the bill of information was sufficient to give the Defendant fair notice and to identify the offense. The bill of information specifically cites the subpart of the statute under which the Defendant would be prosecuted. A reading of that subpart contains sufficient particulars to give the Defendant fair notice of the offense and the enhanced penalty attached thereto. See. State v. Gainey, 376 So.2d 1240 (La.1979). This assignment of error lacks merit.
ASSIGNMENT OF ERROR NUMBER SIX
The Defendant contends that he was prejudiced by the trial court's failure *33 to charge the jury on a lesser included offense. More particularly, the Defendant complains that, although he was charged under a subpart of the obscenity statute providing for an enhanced penalty, the trial court failed to offer the jury the option of returning a verdict of guilty of obscenity under La. R.S. 14:106(A)(1), as a lesser included offense to La. R.S. 14:106(G)(4). The Defendant contends, as he does in Assignment of Error Number Four, infra, that the State did not provide sufficient evidence to support his conviction, because it did not prove that the victim was unmarried. Had the trial court properly instructed the jury, the Defendant argues, he might have been convicted of an offense that carries a lesser penalty.
With regard to general jury instructions, La.C.Cr.P. art. 802 provides, in part, that "[t]he court shall charge the jury... [a]s to the law applicable to the case." Under the category of general charges is the requirement that the judge charge the jury as to the law regarding lesser included offenses for which the jury can return a verdict. State v. Simmons, 01-0293, p. 5 (La.5/14/02), 817 So.2d 16, 20. Pursuant to La.C.Cr.P. art. 815, the trial judge instructed the jury that the possible verdicts were guilty of obscenity, guilty of attempted obscenity, and not guilty. Further, obscenity was defined as La. R.S. 14:106(G)(4), "exposing himself in the presence of H.C." who was an unmarried, 13 year old girl.
The record shows, and the Defendant concedes, that he failed to properly preserve this issue for appeal by objecting to the trial judge's general jury charge. In order for a defendant to properly preserve his objection to the trial court's general charges to the jury, he must comply with the contemporaneous objection rule. La. C.Cr.P. art. 841. An objection to the general charge is timely if made immediately after the jury is retired. State v. Hardeman, 467 So.2d 1163, 1171 (La.App. 2nd Cir.1985). However, even if reviewed on its merits, the Defendant's argument lacks merit.
Defendant cites State v. Harris, 99-0820 (La.App. 1st Cir.2/18/00), 754 So.2d 304, in support of his argument. In that case, the defendant was convicted of obscenity after exposing himself to children in kindergarten through the eighth grade. The bill of information did not cite section (G)(4) of the statute, the jury was not charged as to the elements of that subpart, and the ages of the victims were not included on the verdict sheet. At the time of sentencing, the trial judge did not state under which penalty provision the defendant was being sentenced. However, it was obvious, from comments which the trial judge made at the time of sentencing, that he was sentencing the defendant under the enhanced provisions of subpart (G)(4).
On review, the First Circuit vacated the defendant's conviction and sentence, and remanded the case. The court pointed to the state's failure to make the bill of information more specific, the trial judge's failure to charge the jury on the provisions of subpart (G)(4), and the trial judge's failure to include the elements of that subpart on the verdict form. The court found that this last omission did not allow the jury an opportunity to express a finding of guilt either with or without the element that the act was committed in the presence of an unmarried person under the age of 17.
We find that this case is distinguishable from Harris in that the bill of information cited subpart (G)(4). The trial judge instructed the jury as to the elements of that section, the jury verdict form referred to subsection (G)(4) and the Defendant exposing himself to H.C. The only victim in this case was an unmarried 13 year old. There was no lesser offense supported by the *34 evidence. This assignment of error lacks merit.
ASSIGNMENT OF ERROR NUMBER SEVEN
The Defendant complains that, because the verdict returned by the jury was guilty of "obscenity," and there is no mention on the verdict sheet of the elements of La. R.S. 14:106(G)(4), the trial court should have used the lower sentencing range in La. R.S. 14:106(G)(1) to sentence him. We disagree.
Upon review, we find that the jury convicted the Defendant of La. R.S. 14:106(G)(4). The verdict sheet referenced that offense and defined obscenity as the Defendant "exposing himself in the presence of H.C.," who was a 13 year old unmarried girl. The bill of information charged that offense, the jury was instructed on that offense and the only evidence introduced at trial was that the victim was 13 years old. Although the jury verdict form stated that the jury found the Defendant "guilty of obscenity," in the context presented, with the only charged offense being guilty of obscenity with an unmarried person under seventeen, we find that was the offense of which the Defendant was found guilty. Therefore, there was no error in sentencing the Defendant based on the range provided in La. R.S. 14:106(G)(4).[7] This assignment lacks merit.
ERRORS PATENT DISCUSSION
The record was reviewed for errors patent. La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5th Cir. 1990). Following review, we find no such errors.[8]
Accordingly, for the reasons stated above, the Defendant's conviction for obscenity is affirmed. His finding as a second felony offender and enhanced sentence are vacated and the case is remanded for further proceedings consistent with this opinion.
CONVICTION AFFIRMED; FINDING AS A HABITUAL OFFENDER AND SENTENCE VACATED; AND CASE REMANDED.
NOTES
[1] The Defendant was originally represented by the Louisiana Appellate Project. However, on January 22, 2003 retained counsel filed a motion to enroll and a motion for additional time to file a supplemental brief. Both motions were granted. Thereafter, the Louisiana Appellate Project filed a motion to withdraw which was also granted.
[2] Barattini's first name is spelled "Amy" in the transcript, but is spelled "Amee" in the minute entry.
[3] The State used a peremptory challenge to exclude Boudoin.
[4] Defense appellate counsel concedes that trial counsel did not make an express contemporaneous objection to the trial court's ruling each time that a challenge for cause was denied, but it is argued, and we find that the record supports the contention, that in the context of the proceedings, there was an understanding among both counsel and the trial judge concerning the defense objections. Trial counsel gave full reasons for the challenges at the time she made them. Therefore, we will review the claims.
[5] See discussion in Assignment of Error Number Two above.
[6] The judge so instructed the jury.
[7] Since the case is being remanded, although this point is moot, we note that the trial court did sentence the Defendant under the mistaken view that the range was from four to ten years when under the law the range is two and one-half to ten years.
[8] Neither the transcript of the habitual offender sentencing nor the minute entry show that the trial court advised Defendant of the two-year prescriptive period for applying for post-conviction relief. La.C.Cr.P. art. 930.8. Because we have vacated the Defendant's enhanced sentence and are remanding, this error is moot, but is pointed out.