817 So.2d 216 (2002)
STATE of Louisiana
v.
Robbie RIVERS.
No. 01-KA-1251.
Court of Appeal of Louisiana, Fifth Circuit.
April 10, 2002.
*217 John M. Crum, Jr., District Attorney, Rodney A. Brignac, Assistant District Attorney, LaPlace, LA, for Plaintiff/Appellee.
Jane L. Beebe, Louisiana Appellate Project, Gretna, LA, for Defendant/Appellant.
Panel composed of Judges SOL GOTHARD, SUSAN M. CHEHARDY, and CLARENCE E. McMANUS.
GOTHARD, Judge.
Defendant, Robbie Rivers, appeals his criminal conviction and sentence. For reasons that follow, we affirm the conviction, and amend and affirm the sentence.
Defendant was charged by grand jury indictment with distribution of cocaine in violation of LSA R.S. 40:967 by selling cocaine to an undercover police officer. He entered a plea of not guilty to the charge and was subsequently tried by a jury. At the close of the trial, defendant was found guilty as charged and in due course sentenced to serve five years at hard labor, with three years suspended, subject to certain conditions. Notably, defendant was ordered to serve six months in a half-way house, participate in a drug rehabilitation program, and pay various fines and fees. Both the defendant and the State objected to the sentence. The defendant's oral motion for reconsideration of sentence was denied. The State noted *218 its intention to seek supervisory writs with regard to the sentence imposed and received a return date. However, there is no indication that any further action was taken by the State regarding the sentence. Defendant made an oral motion for appeal, and thereafter filed a written motion which was granted by the trial court.

FACTS
At trial the following facts were related by various witnesses. On June 9, 2000, Detective Troy Hidalgo of the St. John the Baptist Parish Sheriffs Office and Officer Greg Dorian of the Terrebone Parish Sheriffs Office, Narcotics Division, set up an undercover drug operation in Reserve, Louisiana, in what was known as a high crime area. Detective Hidalgo supervised the operation, and monitored the transactions. Officer Dorian, using the alias "Shaggy", assumed the role of a construction worker in the area seeking to buy drugs. Officer Dorian was driving a pickup truck, equipped with audio and video recording devices, in the targeted area.
According to Officer Dorian's testimony at trial, he dressed as a construction worker and drove the pick-up truck down East 27th Street at about 4:00 p.m. Officer Dorian saw several men, including the defendant, on the side of the road engaged in a game of horseshoes. Officer Dorian stopped the truck and defendant approached him. Officer Dorian asked defendant if he knew "Kevin", a known drug dealer in the area. The officer asked defendant if he could get a "40" or a "20." Officer Dorian testified that defendant stated that he could get a "40" and he told the officer to drive down the street, turn around and come back. Officer Dorian complied with the request. When the undercover officer returned, defendant got into the passenger seat of the truck. Officer Dorian identified himself as "Shaggy" and said he was a construction worker, currently employed at the Holiday Inn construction site nearby. Officer Dorian testified that he asked defendant for a "40" and showed the money to defendant. At that point, defendant handed the officer a packet of what appeared to be cocaine, while taking the money from the officer. Officer Dorian drove the truck forward for about 20 or 30 feet, and let the defendant out.
Officer Dorian continued down East 27th Street toward River Road. When he was out of the immediate area, he gave a description of the seller on the audio device to the other members of the surveillance team. He also put the drugs in a plastic bag, with a number and his initials. Thereafter, the packet was turned over to Detective Hidalgo. The substance was later tested and found to be cocaine.
Following the undercover operation, the videotape of the transaction was shown to Officer Mike Murdon of the St. John the Baptist Parish Street Crimes Unit. Officer Murdon identified the seller on the videotape as Robbie Rivers. According to Officer Murdon, he was able to identify the defendant because he had dealt with him in the past.
Defendant testified on his own behalf at trial. He stated that he lived in the area where the incident occurred. He said that, on the date in question, he was playing horseshoes with some friends, when the officer drove up and asked if defendant knew "Kevin." Defendant told the officer to turn around and he was going to call Kevin, who was a mechanic and lived in the neighborhood. Defendant testified that he was a currently unemployed fork-lift operator. Defendant said he got in the truck because he thought the driver was a construction worker who may know of a job. Later defendant stated he got in the truck to help find Kevin, who lived on the corner of the street where the men were *219 gathered. When he found out there was no work, defendant got out of the truck. He denied having any conversations regarding drugs with the officer. He further denied selling drugs to the officer.
At trial the jury was shown a videotape of the transaction. That tape is included in the record before us and shows the defendant approaching the truck. The undercover officer can be heard saying that Kevin told him yesterday that if he came back today he would "hook me up with a 40." Defendant responds, but the response is inaudible. The truck can be seen moving down the street a short distance, turning around and returning to where defendant was standing. Defendant, with a clenched left fist, enters the truck. Once the two men are inside the truck, defendant asks the driver to identify himself. Officer Dorian says his name is Shaggy and he is a construction worker. Defendant verifies that the officer is "not the police." A voice is heard saying, "what you got, 40?" The truck travels a short distance, stops, and defendant exits the vehicle. The truck continues down the street and Officer Dorian can be heard giving a description of defendant.
Detective Troy Hidalgo monitored the entire transaction through audio and video devices affixed to the truck driven by Officer Dorian. Detective Hidalgo testified at trial that Officer Dorian gave him the substance purchased from defendant in the transaction. Detective Hidalgo initialed the bag and gave it to Detective Harry Troxclair, who tested the substance and discovered it was cocaine.

LAW AND ANALYSIS
In brief to this court, defendant argues the evidence presented was insufficient to support his conviction on the charge of distribution of cocaine, and he further requests a review of the record for errors patent. In support of his position that the evidence was insufficient, defendant maintains the videotape used by the prosecution, purportedly depicting the drug transaction between the police officer and defendant, was ambiguous, the officer's memory was unreliable, and the circumstances surrounding the alleged transaction were unusual.
The standard for review in sufficiency of evidence cases is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the State proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Mitchell, 99-3342 (La.10/17/00), 772 So.2d 78. In applying this standard, the reviewing court will not assess credibility nor re-weigh the evidence. State v. Rosiere, 488 So.2d 965, 968 (La.1986). The trier of fact shall evaluate credibility and when faced with a conflict in testimony, is free to accept or reject, in whole or in part, the testimony of any witness. State v. Silman, 95-0154 (La.11/27/95), 663 So.2d 27, 35. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual finding. State v. Stec, 99-633 (La.App. 5 Cir. 11/30/99), 749 So.2d 784, 787.
In the instant matter, defendant was charged with and convicted of distribution of cocaine, in violation of LSA-R.S. 40:967 A, which makes it "unlawful for any person knowingly or intentionally:"
(1) To produce, manufacture, distribute, or dispense or possess with intent to produce, manufacture, distribute, or dispense, any controlled dangerous substance classified in Schedule 11.
*220 Cocaine is a Schedule 11 drug pursuant to LSA-R.S. 40:964. Accordingly, it was incumbent upon the State in this case to prove that the defendant knowingly or intentionally distributed cocaine, a dangerous substance classified in Schedule 11. State v. Raines, 00-1941 (La.App. 5 Cir. 5/30/01), 788 So.2d 635, 640.
Defendant's principal argument in regard to the insufficiency of evidence is that the videotape of the transaction is inconclusive proof that a drug transaction took place between defendant and the undercover officer. While the tape standing alone may be insufficient, when coupled with Officer Dorian's testimony which corroborates the drug dealing, it is sufficient. Further, although Officer Dorian could not recall the exact transaction which preceded the one at issue, his testimony regarding the transaction with defendant is clear. We also note that, while the defendant's testimony contradicts that given by the police officers, the jury apparently considered the officer's testimony to be more credible.
Under the facts presented in this case, viewing the evidence in the light most favorable to the prosecution, the jury could have found that the State met its burden of proof. Accordingly, we find no merit in defendant's first argument.
We have conducted a review of the record for errors patent on the face of the record as requested by defendant. On review we find the sentence imposed on defendant is illegally lenient. At the time of the commission of the crime, LSA-R.S. 40:967 B(4)(b) provided in pertinent part that a defendant convicted of distribution of cocaine:
....... shall be sentenced to a term of imprisonment at hard labor for not less than five years nor more than thirty years, with the first five years of said sentence being without benefit of parole, probation, or suspension of sentence.......
LSA-C.Cr.P. art. 893 provided that a sentencing court has discretion to suspend imposition or execution of a sentence "where suspension is allowed under the law. ....." In this instance the provision suspending three of the five years is not allowed under the law.
Acts 2001, No. 403 § 4, effective June 15, 2001, amended both R.S. 40:967 B(4) and C.Cr.P. article 893.[1] R.S. 40:967 B(4)(b) as amended now provides that a defendant convicted of distribution of cocaine:
....... shall be sentenced to a term of imprisonment at hard labor for not less than two years nor more than thirty years, with the first two years of said sentence being without benefit of parole, probation, or suspension of sentence.......
The trial judge in the case at bar took into consideration the amendment to the R.S. 40:967, and sentenced defendant to serve five years at hard labor, but suspended three years of the sentence. In sentencing this defendant, the trial court stated:
....... I believe that the same reasons that underlie the Legislature's desire to amend the sentence still applies here today. And I find for that reason, that notwithstanding that his, the offense for which he was convicted precedes the amendment. This Court finds that it is within the Court's discretion to, in fact, order a sentence in line with the amendment and that is what I'm intending to do. The defendant, based upon the conviction that was received in this particular matter, this Court hereby *221 sentences the defendant in accordance with the revised or amended provisions of Article R.S, 976(a)(1)(sic) to serve a term of five (5) years with the Department of Corrections. I will suspend three (3) years and he will be placed on active probation.......
Thus, it is clear that the trial court sentenced this defendant under the statute as amended.
The amending act became effective on June 15, 2001, and specifically provides that "(T)he provisions of this Act shall only have prospective effect." This court has recently addressed the issue of which law should be applied when, as here the sentencing occurred after the amendment to a criminal statute became effective, but the underlying offense was committed before the effective date. In State v. Sugasti, 01-770 (La.App. 5 Cir. 11/27/01), 802 So.2d 943 at 946; we stated:
In State v. Wright, 384 So.2d 399, 401 (La.1980), the Louisiana Supreme Court held that "the law in effect at the time of the commission of the offense is determinative of the penalty which the convicted accused must suffer." This rule of law has been consistently applied in the courts of this state. In State v. Thomas, 464 So.2d 470, 472 (La.App. 1 Cir.1985), the First Circuit stated that it is the penalty provision at the time of the commission of the offense, not the time of sentencing, that is applicable. In State v. Lapoint, 93-1141 (La.App. 3 Cir. 4/6/94), 635 So.2d 554, 559, vacated on other grounds and remanded, 94-1173 (La.9/23/94), 642 So.2d 1304, the Third Circuit recognized the general law that a criminal defendant is to be sentenced under the statute in effect at the time of the commission of the crime. In State v. Bryan, 535 So.2d 815, 820 (La. App. 2 Cir.1988), the Second Circuit held that a criminal offense is punishable according to the statutory penalties in effect when the offense was committed.
The legislature's subsequent changes in pertinent law remain a relevant sentencing consideration within the limits fixed by law at the time of the commission of the crime. State v. Robinson, 423 So.2d 1053, 1063 (La.1983). See also; State v. Clark, 391 So.2d 1174 (La.1980). Thus, we conclude that, while the sentencing court can consider the legislative changes to the extent that sentencing is discretionary, it still must abide by the law in effect at the time of the commission of the underlying crime.
In the instant matter, the sentencing court imposed a five year sentence with suspension of three years. Under the applicable law, this defendant must serve his five year sentence without benefit of parole, probation or suspension of sentence. That provision is mandatory and not within the judge's discretionary authority. For the foregoing reasons we find defendant's sentence to be illegally lenient.
The appellate courts of this State have the authority to correct an illegally lenient sentence pursuant to LSA C.Cr.P. article 882 and the Supreme Court's pronouncement in State v. Williams, 00-1725 (La.11/28/01), 800 So.2d 790. Because the trial court affirmatively suspended a portion of defendant's sentence in contradiction to the existing statute, the correction is not self-activating. It requires an action by this court. State v. Williams, supra; State v. Butler, 01-0907 (La.App. 5 Cir. 2/13/02), 812 So.2d 120. Accordingly, we amend the sentence to eliminate the illegal suspension of the sentence and correct the sentence to conform with the provisions of LSA-R.S. 40:967 B(4)(b) as it existed at the time of the commission of the crime.
We also note that the trial court has failed to inform defendant of the two year prescriptive period from the finality of his *222 conviction and sentence to apply for post-conviction relief in accordance with LSA-C.Cr.P. art. 930.8. We hereby order the trial court to inform defendant of the prescriptive period by sending written notice to defendant within ten days from the rendition of this opinion and to file written proof in the record that defendant received such notice. State v. Boles, 99-662 (La.App. 5 Cir. 11/10/99), 750 So.2d 1059, 1062.
CONVICTION AFFIRMED; SENTENCE AMENDED, AND AS AMENDED, AFFIRMED; MATTER REMANDED WITH ORDER.
NOTES
[1] The amendment to article 893 does not affect this particular case.