839 So.2d 235 (2003)
STATE of Louisiana
v.
Kevin D. COBB.
No. 02-KA-967.
Court of Appeal of Louisiana, Fifth Circuit.
January 28, 2003.
Paul D. Connick, Jr., District Attorney, Andrea F. Long, Terry M. Boudreaux, Nancy A. Miller, Richard Bates, Assistant District Attorneys, Gretna, LA, for State.
Margaret S. Sollars, Thibodaux, LA, for defendant-appellant.
Panel composed of Judges THOMAS F. DALEY, SUSAN M. CHEHARDY and CLARENCE E. McMANUS.
*236 CLARENCE E. McMANUS, Judge.

STATEMENT OF THE CASE
Defendant, Kevin Cobb, was charged on July 14, 1997 by bill of information with distribution of cocaine in violation of LSA R.S. 40:967 A. Defendant pled not guilty and was tried by a twelve person jury on March 3, 1999. The jury found defendant guilty as charged. Thereafter, on March 26, 1999, the state filed a habitual offender bill of information alleging defendant to be a second felony offender. On April 9, 1999, defendant admitted to the allegations after being advised of his constitutional rights. The trial court found defendant to be a second felony offender and sentenced him to 15 years at hard labor, without probation or suspension of sentence. No written or oral motion for appeal was filed by the defendant.
On July 18, 2000, defendant filed a pro se Motion for Production of Documents, Trial Transcripts, Motion to Suppress Evidence Transcripts, Sentencing Transcripts, Verbatim Copy(s). In that document, he noticed his intent to file an application for post-conviction relief, alleging insufficiency of the evidence and ineffective assistance of counsel. On August 1, 2000, the trial judge issued an Order finding the defendant entitled to the relief sought. The trial judge further stated that due to the large number of prisoners requesting copies of transcripts, the defendant should not expect to receive his transcript until December 28, 2000.
On May 17, 2001, defendant filed a pro se Motion for Appeal and Enrollment Appointment of Counsel. On May 22, 2001, the trial court denied the motion finding that the time period for filing a motion for appeal had lapsed and defendant must file an application for post-conviction relief requesting an out of time appeal. On March 19, 2002, defendant filed a pro se Application for Post Conviction Relief Seeking Out of Time Appeal alleging that his counsel failed to ask the court for a direct appeal and counsel was ineffective for failing to file the motion for appeal. On April 22, 2002, the trial court granted the defendant's motion for an appeal and ordered that the Louisiana Appellate Project be assigned to the appeal.

FACTS
Detective Blaine Hebert, a narcotics detective with the Kenner Police Department, testified that, on the night of June 24, 1997, he participated in a sting operation in Kenner. Hebert testified that the police department had received numerous complaints of street-level drug dealers doing business in front of 312 and 314 Farrar Street. Hebert, who was working undercover, was equipped with an audio transmitter to allow surveillance officers to monitor his activities. Detective Glenn Synigal, the officer overseeing the operation, supplied Hebert with between two hundred and three hundred dollars in currency with which to attempt drug transactions. Hebert and Synigal photocopied the money beforehand, so they could later compare the serial numbers on that money to the numbers on any money seized from arrestees.
Hebert testified that he drove an unmarked vehicle to the 300 block of Farrar Street. The surveillance or "cover" team, which included Synigal, Detective Jenell Godfrey, Officer Chris Yokum, and Officer Ronald LaBarriere, waited a short distance away on Third Street. Hebert testified that two men flagged him down. Hebert recognized both men from prior encounters. One was defendant, Kevin Cobb. The other man was Alex Wells.
When Hebert stopped his vehicle, both men approached. Defendant initiated verbal contact by saying, "How much?" Hebert *237 said, "I want a big twenty." Wells handed Hebert a "twenty," and Hebert gave defendant a twenty-dollar bill. Hebert left the scene, and immediately radioed a description of the two subjects to the surveillance officers. He gave the subjects' names as Kevin Cobb and Alex Wells.
The cover team moved in on the scene within seconds. Defendant was stopped in front of his residence at 312 Farrar Street. Detective Godfrey testified that she recognized defendant immediately, as she had had frequent contact with defendant during her years as a patrol officer in that neighborhood. She was also familiar with Alex Wells. Upon seeing the police officers, Wells fled on foot. He attempted to hide in a nearby residence, but was quickly apprehended by Godfrey and LaBarriere. LaBarriere testified that he was familiar with Wells.
Both defendant and Wells were detained in front of defendant's house. Godfrey drove Hebert past the scene, and Hebert identified defendant and Wells as the men from whom he had bought the crack cocaine. Upon searching Wells' person, Godfrey recovered a twenty-dollar bill, which matched one of the bills photocopied prior to the operation. Synigal testified that the officers field-tested the rock Hebert purchased, and the result was positive for cocaine. Defendant and Wells were placed under arrest. At trial, the parties agreed to stipulate that the rock-like material purchased by Hebert was tested by the Jefferson Parish Crime Lab, and that the result was positive for cocaine.
Defendant testified on his own behalf at trial. He stated that, on the night of June 24, 1997, he and his friend, Derrick Allen, were walking together on Farrar Street. Allen's grandmother lives in that area. Police officers suddenly descended on him and ordered him to lie on the ground. When he asked an officer what he was being held for, he was told, "You gonna find out when you get there." Officers appeared with Alex Wells, and ordered him to lie down. Defendant testified that he was not with Wells on the night of June 24, 1997, and that he was not the person who approached Hebert's car and asked what he needed.

ASSIGNMENT OF ERROR NUMBER ONE
Defendant argues that the evidence was insufficient to support a guilty verdict because the testimony of the state's witnesses was not credible and he was a victim of mistaken identity. The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Juluke, 98-0341 (La.1/8/99), 725 So.2d 1291; State v. Williams, 99-223 (La.App. 5 Cir. 6/30/99), 742 So.2d 604. In applying this standard, the reviewing court will not assess the credibility of witnesses, nor re-weigh evidence. State v. Rosiere, 488 So.2d 965, 968 (La.1986); State v. Ellwood, 00-1232, (La.App. 5 Cir. 2/28/01), 783 So.2d 423, 427. The trier of fact shall evaluate credibility, and when faced with a conflict in testimony, is free to accept or reject, in whole or in part, the testimony of any witness. State v. Rivers, 01-1251, (La. App. 5 Cir. 4/10/02), 817 So.2d 216, 219. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness' testimony, if believed by the trier of fact, is sufficient support for the requisite factual finding. Rivers, 01-1251, 817 So.2d at 219.
*238 Defendant was charged with and convicted of distribution of cocaine, in violation of LSA-R.S. 40:967A(1), which makes it "unlawful for any person knowingly or intentionally ... [t]o produce, manufacture, distribute, or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance ... classified in Schedule II." The state thus had the burden of proving that defendant knowingly and intentionally distributed cocaine, which is a controlled substance listed under Schedule II. LSA-R.S. 40:964A(4); State v. Raines, 00-1941, (La.App. 5 Cir. 5/30/01), 788 So.2d 635, 640, writ denied, 01-1906 (La.5/10/02), 815 So.2d 833. A defendant may be found guilty as a principal if he aids and abets in the distribution, or if he directly or indirectly counsels or procures another to distribute a controlled dangerous substance such as cocaine. State v. Bartley, 00-1370, (La.App. 5 Cir. 2/14/01), 782 So.2d 29, 32-33, writ denied, 01-0717 (La.2/22/02), 809 So.2d 981.
Detective Hebert participated in the transaction, and was therefore the state's only eyewitness. He testified that defendant and Wells flagged him down and approached his vehicle together. Hebert, who has worked undercover for ten years, explained that sometimes, street dealers work in groups. There might be several people standing on a street corner, and it is difficult to discern which is the supplier. They might all approach the buyer. The person who takes the buyer's money might be working in concert with someone else. It was defendant who asked Hebert what he wanted. When Hebert said he wanted a "twenty," Wells gave him a rock of crack cocaine. It was defendant who took Hebert's money. Wells did not make any attempt to obtain money from the officer. Even if he did not personally hand Hebert the crack, defendant's actions made him a principal to the sale.
Defendant argues that the state's witnesses gave varying accounts as to what time it was when the transaction took place, and that the question of whether it was light or dark when the buy took place was crucial to Hebert's ability to clearly see the perpetrators. Encompassed in proving the elements of an offense is the necessity of proving the identity of the perpetrator. State v. Raines, supra. When the key issue is the defendant's identity as the perpetrator, rather than whether the crime was committed, the state is required to negate any reasonable probability of misidentification. State v. Cowart, 01-1178, (La.App. 5 Cir. 3/26/02), 815 So.2d 275, 283.
Sergeant Synigal, the officer supervising the operation, testified that the group began to set up at 9:06 p.m. Officer LaBarriere testified it was dark outside when the cover team went in to apprehend the perpetrators. Hebert testified that the operation began "probably somewhere around seven." When asked whether it was dark outside when he made the purchase, Hebert responded, "If itif it was dark it couldn't have been too dark. I believe it was, you know, mid-June, and the sun doesn't set until around 8:30, 8:20/8:30 at night, and this was before that time." These discrepancies in the testimony go to the weight, and not the sufficiency of the evidence.
Hebert had had extensive dealings with Alex Wells, and would thus have been able to distinguish between the two men. Hebert knew defendant prior to the night of June 24, 1997. He had once stopped defendant in the 300 block of Hanson Street, a block away from where the instant transaction took place, based on reports of drug activity in that area. Hebert knew both men well enough to identify them by name when he gave descriptions to the surveillance *239 team. Moreover, Hebert was able to identify defendant in person shortly after the transaction.
Detective Godfrey testified that she knew Wells' voice very well from having dealt with him so many times in the past. The voice she heard over Hebert's transmitting equipment was not Wells', and must, she believed, have been defendant's voice.
Defendant asserts that Detective Godfrey's trial testimony should be discounted, as she has since been convicted of tampering with evidence during her tenure as evidence custodian with the Kenner Police Department. Defendant's argument has no merit. This information was not before the jury at trial, and is not part of the record herein. Even assuming such information was part of the record, it would go to Godfrey's credibility, a matter not re-weighed on appeal.
Defendant points out that no money was recovered from his person, while a twenty-dollar bill was seized from Wells. Defendant argues that the state failed to explain how he could have received the money from Hebert, then passed it to Wells in the seconds before the police surveillance team descended on him. Hebert's testimony regarding the behavior of street-level dealers does provide an explanation. Considering that defendant and Wells worked in concert with each other during the transaction with Hebert, it is clearly possible that defendant slipped Wells the money immediately after Hebert gave it to him.
Defendant testified at trial that he was with his friend, Derrick Allen, when police stopped him. Although he knew Wells, he denied having been with Wells that night. Godfrey testified that she did not come in contact with Derrick Allen on June 24, 1997, and does not know who he is. Defendant also denied having lived on Farrar Street at the time of the incident. However, Sergeant Daniel Murphy of the Jefferson Parish Correctional Center testified that defendant's June 24, 1997 arrest register listed his address as 312 Farrar Avenue in Kenner.
Considering the foregoing, we find that defendant's conviction was based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. Therefore, we affirm defendant's conviction of distribution of cocaine.

ERRORS PATENT DISCUSSION
The record was reviewed for errors patent. LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir. 1990). The review reveals no patent errors.
In accordance with the above, defendant's conviction of distribution of cocaine is affirmed.
AFFIRMED.