850 So.2d 811 (2003)
STATE of Louisiana
v.
Kendrick TURNER.
No. 03-KA-325.
Court of Appeal of Louisiana, Fifth Circuit.
June 19, 2003.
*813 Margaret Smith Sollars, Louisiana Appellate Project, Thibodaux, LA, for Appellant, Kendrick Turner.
Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Andrea F. Long Bradley R. Burget, Thomas S. Block, Assistant District Attorneys, Gretna, LA, for Appellee, State of Louisiana.
Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS and SUSAN M. CHEHARDY.
SUSAN M. CHEHARDY, Judge.
On September 27, 2000, the Jefferson Parish District Attorney filed a bill of information charging defendant, Kendrick Turner, with armed robbery and possession of a firearm by a convicted felon. Willie Cotton was charged as a co-defendant on the armed robbery charge only. Defendant was arraigned on September 28, 2000, and pled not guilty.
On May 23, 2001, trial against defendant commenced. After a two-day trial, the 12-person jury returned a verdict of guilty as charged on both counts. On May 29, 2001, the trial court sentenced defendant to 50 years at hard labor for armed robbery and 15 years at hard labor for possession of firearm by a convicted felon. The court ordered both sentences to be served without benefit of parole, probation or suspension of sentence and to run concurrently. Defendant made an oral motion for appeal, which the court granted.
Immediately following sentencing, the State filed a habitual offender bill of information, alleging that defendant was a second felony offender. Defendant was apprised of the allegations, which he denied. After the habitual offender hearing, the trial court found that defendant was a second felony offender. The court thereafter vacated defendant's original sentence for armed robbery and imposed an enhanced sentence of 100 years at hard labor without benefit of parole, probation or suspension of sentence. The court instructed that the sentence be served concurrently with the sentence for possession of a firearm by a convicted felon and consecutively with any other sentence defendant was serving. Defendant made an oral motion for appeal of the habitual offender ruling and sentence, which the trial court granted.
Facts
On August 16, 2000, Willie Cotton picked up his cousin, Kendrick Turner, at his house about 3:30 p.m. and the two had drinks together and visited their girlfriends in Algiers. At about 9:00 p.m. that evening, Cotton and Turner stopped at the E-Z Serve in Westwego in Cotton's truck so that Cotton could get change to use the pay phone. After making a phone call, Cotton left his truck parked near the E-Z Serve and walked to a nearby apartment complex to deliver a package for an associate.
On August 16, 2000, Anika Murth was working the evening shift at the E-Z Serve Convenience Store at 1200 Westbank Expressway in Westwego, Louisiana. At trial, Ms. Murth testified that, at about 9:30 p.m. that night, a black man, who was about 21 years of age, between 5 § 9 and 6 § tall, and between 180-190 pounds, entered the store, pulled a semi-automatic handgun from his waistband, and demanded money. Ms. Murth gave him the cash from the store's cash register. Once the gunman left the store, Ms. Murth locked *814 the doors, called police, and hid in the bathroom until officers arrived.
When she was interviewed by the police, Ms. Murth indicated that the gunman was wearing a white t-shirt and blue or black shorts. The gunman covered the lower part of his face with a white shirt so Ms. Murth was only able to see his eyes, which she described as bloodshot.
At that same time, Rodney Long and his wife, Michelle, were in their truck at the corner of Central Avenue and Westbank Expressway, waiting at a red traffic light. They were about 300 feet from the entrance of the E-Z Serve. Mr. Long saw a black man, who was about 6 § tall, approximately 200 pounds, and wearing a white t-shirt and dark-colored shorts, quickly exit the E-Z Serve, walk to the Central Avenue side of the building, then jog south on Central toward Lapalco. When he saw the store's clerk run to the front door and lock it, Rodney Long thought that a robbery had occurred.
About this time, Cotton returned to the truck and found defendant was not there. Cotton started the truck and began to drive away slowly. Defendant ran from the direction of the E-Z Serve and jumped into the passenger seat of Cotton's truck. According to Cotton, defendant was carrying a bag.
After the defendant got into the passenger side of the truck waiting at the corner of Central Avenue and Hickory, the Longs decided to follow the truck, which sped away. The Longs followed the truck, which they described as blue with primer spots and body damage, for some time attempting to ascertain the vehicle's license plate number, which they eventually did. Soon after the Longs got the truck's license plate number, the subject leaned out of the truck's passenger window and fired two shots at the Longs. The Longs ended their pursuit immediately and reported the truck's license plate number and description to the police.
After the chase, the Longs headed back toward the E-Z Serve. While en route, they flagged down Sergeant Warren Martin of the Westwego Police Department, gave him a description of the truck, and told him in which direction the suspect was traveling. Although Sergeant Martin canvassed the area for the truck, he did not find it. He ran the license plate number on the police computer system and found that the truck was registered to Willie Cotton.
While on his way to the address at which the truck was registered, Sergeant Martin received information from the dispatcher that a truck matching the description of the one leaving the E-Z Serve robbery was in a parking lot in the 1500 block of Westwood. When Sergeant Martin arrived at that location, he found the truck and learned that Willie Cotton's mother had informed the Jefferson Parish Sheriff's Office that he was at this location. Cotton was arrested. Sergeant Martin transported him to the Westwego Police Department headquarters, where Cotton consented to a search of his truck. Sergeant Martin recovered a live .380 caliber bullet on the seat of Cotton's truck and a bag.
After arriving at Westwego Police headquarters, Sergeant Martin conducted a tape-recorded interview with Cotton. According to Cotton, defendant told Cotton he had robbed the E-Z Serve. Cotton also saw a truck following them when they left the area. Cotton thought they were being followed because of the robbery. Cotton realized that defendant had a gun when defendant fired shots at their pursuers as Cotton attempted to elude them. After they eluded the Longs, Cotton and defendant went to Keisha Heard's apartment. The two men went upstairs, where *815 defendant gave Cotton approximately $40.00 in cash, some of which was in a brown E-Z Serve bag.
After interviewing Cotton, Sergeant Martin went to Keisha Heard's[1] apartment, which was located at 1500 Westwood, the street where Willie Cotton had been apprehended. Sergeant Martin then interviewed Ms. Heard at police headquarters. In her statement, Ms. Heard told Sergeant Martin that Cotton and defendant arrived at her apartment between 9:45 and 10:00 p.m. the night of August 16, 2000. She also stated that the men were acting strangely because every time a visitor knocked on her door, the two ran upstairs to hide. She recounted that when she asked defendant and Cotton why they were acting suspiciously, they told her there had been a shootout.
She also remembered that defendant and Cotton left her apartment, but returned later that evening while she was away. When Ms. Heard returned, she saw defendant standing suspiciously in the doorway of her downstairs closet. Later, after defendant left her apartment, Ms. Heard searched the closet where defendant was standing and found a handgun. Ms. Heard wrapped the gun in a towel and took it to the nearby apartment of her cousin, Petra Broome. Ms. Heard did not tell Ms. Broome about the robbery.
After Sergeant Martin learned from Ms. Heard that the gun allegedly used in the robbery was in Ms. Broome's apartment, he accompanied Ms. Heard to Ms. Broome's apartment. Ms. Broome gave her consent to a search of her apartment and directed Sergeant Martin to the gun, which she had hidden in a cabinet above her refrigerator. Sergeant Martin recovered a .9 mm handgun. Neither Ms. Broome nor Ms. Heard was charged with a crime.
Based on the information he gathered from the various witnesses, Sergeant Martin obtained a warrant for defendant's arrest. Martin did not execute the warrant because defendant turned himself over to police.
After hearing the testimony of these witnesses and reviewing the evidence, the twelve-person jury found the defendant guilty as charged of armed robbery and possession of a firearm by a convicted felon. Defendant appeals his conviction and sentence.
On appeal, defendant argues that the verdict was contrary to the law and evidence presented at trial. He specifically contends that the State failed to prove beyond a reasonable doubt that he was guilty of armed robbery,[2] as it did not offer sufficient evidence as to identity. While defendant does not dispute that an armed robbery occurred at the E-Z Serve store, he maintains that he is not the person who committed the offense.
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Ortiz, 96-1609, p. 12 (La.10/21/97), 701 So.2d 922, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 *816 L.Ed.2d 722 (1998); State v. Williams, 99-223, p. 6 (La.App. 5 Cir. 6/30/99), 742 So.2d 604, 607.
Evidence may be either direct or circumstantial. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Williams, 99-223 at p. 8, 742 So.2d at 608. When circumstantial evidence is used to prove a case, the trial judge must instruct the jury that, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. R.S. 15:438.
In State v. Mitchell, 99-3342, p. 7 (La.10/17/00), 772 So.2d 78, 83, the Louisiana Supreme Court commented:
On appeal, the reviewing court "does not determine whether another possible hypothesis suggested by a defendant could afford an exculpatory explanation of the events." State v. Davis, 92-1623 (La.5/23/94), 637 So.2d 1012, 1020. Rather, the court must evaluate the evidence in a light most favorable to the state and determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. Id.

Ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Captville, 448 So.2d 676, 678 (La.1984); State v. Qutoum, 02-780, p. 4 (La.App. 5 Cir. 1/28/03), 839 So.2d 323, 326.
La. R.S. 14:64 defines armed robbery as "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." In addition to proving the statutory elements of the charged offense at trial, the State is required to prove the identity of the perpetrator. When identity is an issue, the State must negate any reasonable probability of misidentification. State v. Robinson, 02-530, p. 4 (La.App. 5 Cir. 10/29/02), 831 So.2d 460, 464. The trier of fact shall evaluate the witnesses' credibility, and when faced with a conflict in testimony, is free to accept or reject, in whole or in part, the testimony of any witness. State v. Rivers, 01-1251, p. 6 (La.App. 5 Cir. 4/10/02), 817 So.2d 216, 219, writ denied, 02-1156 (La.11/22/02), 829 So.2d 1035. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness' testimony, if believed by the trier of fact, is sufficient support for the requisite factual findings. State v. Rivers, 01-1251 at pp. 6-7, 817 So.2d at 219.
Ms. Murth and the Longs all testified that the robber was a black man wearing dark colored shorts and a white shirt. Willie Cotton and Keisha Heard testified that defendant wore dark shorts and a white shirt on the night of August 16, 2000. The recording made by the store's surveillance camera at the time of the offense supports that clothing description. State's Exhibit 1, a still photograph taken from the surveillance tape, shows a black man wearing a white shirt and dark shorts, who appears to be pulling something from his waistband. Ms. Murth and Mrs. Long both testified that State's Exhibit 1 depicts the perpetrator. Cotton testified that the clothing worn by the man pictured in State's Exhibit 1 and other photographs taken by the surveillance camera is the clothing defendant wore on the night of the robbery. Although none of the witnesses testified that they saw the robber's face, their testimony regarding his clothing, height, and weight, although *817 circumstantial, supports the jury's conclusion that defendant was the perpetrator.
Defendant argues that the evidence points to Willie Cotton as the perpetrator. Cotton admitted that he was in the E-Z Serve on the night of August 16, 2000, but testified that he was there only to get change to use the payphone. He identified State's Exhibit 7 as a surveillance photograph of himself in the store obtaining change. In that photograph, he is wearing a maroon-colored shirt. Further, a police photograph of Cotton taken after his arrest on the night of the robbery shows he was wearing a maroon-colored shirt. Moreover, Sergeant Martin testified that, according to police records, Cotton is 5 § 8 tall and about 165 pounds.[3] The gunman, as pictured in the store's surveillance photographs, is taller and stockier than Cotton.
Defendant argues that Willie Cotton's testimony was wholly unreliable in that it was based on self-interest and was full of contradictions. Cotton disclosed that he had agreed to testify truthfully at defendant's trial and, in exchange, the district attorney's office would allow him to plead guilty to simple robbery. Cotton entered into the deal despite the fact that defendant is his cousin, and the two grew up together. Further, on the night of the robbery, Cotton cooperated with police by consenting to a search of his truck. Finally, Cotton's trial testimony was corroborated by other evidence at trial, including the surveillance film from the E-Z Serve, and the testimony of the Longs and Ms. Heard.
Defendant complains that Keisha Heard's testimony was untruthful, and that she too acted out of self-interest in testifying against him. Defendant asserts that Keisha's involvement in the robbery was greater than she acknowledged, and that her testimony was calculated to protect her from criminal charges. The record does not support defendant's assertion. Ms. Heard testified that she found defendant's gun in her closet after he left it there. Ms. Heard testified she gave the gun to Ms. Broome after Cotton and defendant left the apartment. Sergeant Martin testified that when he questioned Ms. Heard, he advised her of her Miranda[4] rights, and told her he was investigating an armed robbery. Ms. Heard testified that she had never been convicted of a crime, and that she did not have a reason to lie to police.
Here, the twelve-person jury apparently found Willie Cotton and Keisha Heard to be credible witnesses. It is not the function of the appellate court to reweigh the jury's credibility determination. State v. Cassard, 01-931, p. 11 (La.App. 5 Cir. 2/26/02), 811 So.2d 1071, 1077. Based on the foregoing, we conclude that the State sufficiently proved the element of identity under the Jackson standard.
In this second assignment of error, defendant argues that the trial court erred by imposing an excessively harsh sentence. Specifically, defendant maintains that his habitual offender sentence of 100 years was excessive, arguing primarily that the trial court failed to consider the sentencing factors set forth in La.C.Cr.P. art. 894.1.
Defendant failed to timely file a written motion to reconsider sentence following either his original sentencing or his habitual offender sentencing. Defense counsel, however, did object to the length of defendant's sentence following the habitual offender sentencing. While La.C.Cr.P. art. *818 881.1 allows for oral motions to reconsider sentence, part A(2) of that article requires that the motion "set forth the specific grounds on which the motion is based." A complaint that a sentence is "excessive" does not fulfill the article's specificity requirement. See, State v. Freeman, 97-1115, p. 8 (La.App. 5 Cir. 12/29/98), 727 So.2d 630, 635.
Generally, the failure to comply with the provisions of Article 881.1 precludes review of a sentence on appeal. See, State v. Ewens, 99-1096, p. 10 (La. App. 5 Cir. 3/30/99), 735 So.2d 89, 96, writ denied, 99-1218 (La.10/8/99), 750 So.2d 179. However, this Court has routinely reviewed sentences for constitutional excessiveness, even without a proper motion to reconsider sentence. State v. Anderson, 01-789, p. 8 (La.App. 5 Cir. 1/15/02), 807 So.2d 956, 961, writ denied, 02-0569 (La.1/24/03), 836 So.2d 42.
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit imposition of excessive punishment. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. Lobato, 603 So.2d 739, 751 (La.1992); State v. Munoz, 575 So.2d 848, 851 (La.App. 5 Cir.1991), writ denied, 577 So.2d 1009 (La.1991). The trial judge is given wide discretion in determining sentence, and if the record supports the sentence imposed, the court of appeal will not set it aside on grounds of excessiveness. La.C.Cr.P. art. 881.4(D); State v. Richmond, 98-1015, p. 8 (La.App. 5 Cir. 3/10/99), 734 So.2d 33, 38.
As a second felony offender, defendant was subject to a sentencing range of 49 ½ years to 198 years. La. R.S. 14:64; La. R.S. 15:529.1 A(1)(a). Defendant argues that the court's sentence was not tailored to the offense or to him as the offender. While the trial judge did not give reasons for the enhanced sentence, he did express his opinions at the time of the original sentencing:
Okay. All right, Mr. Turner. You were convict [sic] by a jury of one count of armed robbery and one count of a felon carrying a weapon. We had negotiated, there had been negotiations with you for a long period of time, and I told you and your attorney that any sentence that I was offering before the trial didn't take into account anything that I may hear at the trial.
All right. At the trial it came out that you had a past record. You had been convicted of army [sic] robbery in the past. Or you have a past army robbery. You have a past armed robbery conviction.
At the trial it came out that you had this young lady, that you put a gun in her face. Two citizens who were following your truck were shot at. That changes a lot of things. Now, you put other people at risk for death. Armed robbery is a very serious charge. You've done it before. You've done time for it. I believe that a sentence, that no other sentence or a lesser sentence other than the one I'm going to give you will deprecate the seriousness of the crime.
* * *
After hearing the trial, I have no doubt that you are in fact the person who committed that armed robbery. None. Before the trial there is always doubt. After the trial I have no doubt.
In this case, the sentence imposed on the defendant is in the middle of the statutory sentencing range. Defendant has a history of violent offenses. The instant offense was aggravated by the fact that he *819 endangered the lives of the Longs by firing on them. Although the State was only authorized to use one prior offense as a predicate felony for possession of firearm by a convicted felon, the certified record of defendant's prior armed robbery conviction shows that defendant was actually convicted of six counts of armed robbery in 1997. Defendant's imprisonment for those offenses did not deter him from committing the instant offense. Compare, State v. Milton, 32,735 (La.App. 2 Cir. 2/1/00), 751 So.2d 440(100-year habitual offender sentence for armed robbery was not excessive, where the defendant shot the victim at least three times, there was no provocation, and the trial court found that it was likely the defendant would commit other crimes if not imprisoned). Based on the foregoing, we do not find that the trial court abused its wide discretion in imposing a 100-year habitual offender sentence.
Finally, the record was reviewed for errors patent pursuant to La.C.Cr.P. art. 920. We note that defendant's sentence for possession of a firearm by a convicted felon is illegally lenient because the trial court failed to impose a mandatory fine. La. R.S. 14:95.1(B) provides:
Whoever is found guilty of violating the provisions of this Section shall be imprisoned at hard labor for not less than ten nor more than fifteen years without benefit of probation, parole, or suspension of sentence and be fined not less than one thousand dollars nor more than five thousand dollars. (Emphasis supplied).
Neither the State nor defendant raised the illegal sentence issue in the district court or on appeal. According to State v. Williams, 00-1725 (La.11/28/01), 800 So.2d 790, and La.C.Cr.P. art. 882, this Court has the authority to correct an illegally lenient sentence despite the failure of either party to raise the issue in the district court or on appeal. State v. Clemons, 01-1032, p. 2 (La.App.2/26/02), 811 So.2d 1047, 1049, writ denied, 02-866, 02-918 (La.11/22/02), 834 So.2d 972, petition for certiorari filed, April 1, 2003 (No. 02-9975). This authority is, however, permissive rather than mandatory. State v. Jordan, 02-820 (La.App. 5 Cir. 12/20/02), 836 So.2d 609. In this case, we will refrain from taking action on our own motion.
CONVICTION AND ENHANCED SENTENCE AFFIRMED.
NOTES
[1] Keisha Heard is Willie Cotton's first cousin and defendant's second cousin.
[2] Defendant does not challenge the sufficiency of the evidence as to his conviction for convicted felon in possession of a firearm. At trial, the parties stipulated that defendant was previously convicted of armed robbery in case number 96-0239.
[3] Cotton testified that he is 5', 11" tall, and weighs 165 pounds.
[4] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).