864 So.2d 866 (2003)
STATE of Louisiana
v.
Nathaniel GIBBS.
No. 03-KA-967.
Court of Appeal of Louisiana, Fifth Circuit.
December 30, 2003.
*867 Jane L. Beebe, Louisiana Appellate Project, Gretna, LA, for Appellant, Nathaniel Gibbs.
*868 Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District Court, Parish of Jefferson, Terry M. Boudreaux, Juliet Clark, Appellate Counsel, Douglas Freese, Trial Counsel, Assistant District Attorneys, Gretna, LA, for Appellee, State of Louisiana.
Panel composed of Judges EDWARD A. DUFRESNE, JR., SUSAN M. CHEHARDY and CLARENCE E. McMANUS.
SUSAN M. CHEHARDY, Judge.
On December 20, 2000, the Jefferson Parish District Attorney filed a bill of information charging defendant, Nathaniel Gibbs, with aggravated flight from an officer, a violation of La. R.S. 14:108.1. Defendant was arraigned on December 21, 2000 and pled not guilty. On May 24, 2001, the bill was amended to add one count of simple burglary, a violation of La. R.S. 14:62. On that same date, defendant was re-arraigned on the amended bill and pled not guilty.
On July 16 and 17, 2001, trial commenced before a twelve-person jury, which found defendant guilty as charged on both counts. On August 21, 2001, defendant filed a motion for new trial, which was denied. Also on that date, defendant waived sentencing delays, and the trial court sentenced him to two years at hard labor for aggravated flight from an officer and six years at hard labor for simple burglary, with the sentences to run concurrently.
On August 21, 2001, the State filed a multiple bill alleging that defendant was a fourth felony offender. Defendant filed a motion for appeal on August 22, 2001, which was granted.[1] On October 9, 2001, defendant denied the allegations of the habitual offender bill of information.
On May 16, 2002, after again denying the allegations of the habitual-offender bill, defendant orally moved to quash the bill because the State had taken more than ten months to convene a multiple bill hearing. On that same date, the trial court denied defendant's motion to quash.
On March 13, 2003, defendant again orally moved to quash alleging incorrect information in the habitual-offender bill. The State amended and corrected the bill. For a third time, defendant denied the allegations of the amended bill but waived any statutory delays and proceeded with the hearing. That day, the trial court found defendant to be a fourth felony offender, vacated the defendant's simple burglary sentence, and imposed an enhanced sentence of twenty years at hard labor without benefit of probation or suspension of sentence. On March 18, 2003, defendant filed a motion for appeal, which was granted.
At trial, Hudson Folse, the Lubricants Manager of Retif Oil Co., testified that, on November 27, 2000, shortly before noon, he was in the main warehouse counting inventory when he heard a noise coming from the end of the warehouse. When he investigated, he saw a small to medium-sized, dark green car parked outside of the warehouse with the driver's side door open. As Folse approached, he saw a person reach out from the driver's side, shut the door, quickly back out of Retif Oil's yard, spin the car around, and head southbound on Bloomfield Street.
*869 Folse ran after the car, which was approximately fifteen to twenty yards away. As the car exited the yard, Folse saw the car's trunk door open. When the trunk opened, Folse saw a pressure washer, identical to the one his company had just purchased, in the trunk of the departing vehicle. He described the pressure washer as 30 inches wide, 24 to 30 inches long, 3½ feet high, weighing 35 to 40 pounds with a 5 inch by 8 inch plastic-encased price tag reading $499.00 hanging from the handle. Although Folse was unable to see the entire license plate number, he did see that the last number on the license plate was 8.
Folse testified that he could not tell whether the driver was male or female, but he saw that the driver was black. He also stated that there was another individual sitting in the passenger seat. He could not describe either individual in more detail. Mr. Folse identified the vehicle in a still photograph taken from Retif Oil's video surveillance camera, which had been filming another area of the yard.
Edward Castelin, a construction superintendent for F.H. Meyers Construction, testified that, on November 27, 2000, shortly before noon, he was traveling on Bloomfield Street when a green car backed out of Retif Oil Company's fueling yard across the traffic on Bloomfield Street in front of him. He observed four or five men running after the green vehicle and calling for someone to stop the vehicle.
According to Folse, Castelin yelled out, "Stolen?" then, after Folse responded affirmatively, began pursuing the vehicle. Castelin testified that he called 911 and told the operator that he was following a green car with license plate number A558458. For safety reasons, Castelin eventually stopped pursuing the vehicle.
At trial, Castelin described the driver as a "slightly moon faced black fellow." He could not estimate the driver's age because the glare on the car's windshield limited visibility. Castelin described the passenger as a "fair, white-skinned black fellow," slimmer than the driver, in his forties, and weighing 160 to 180 pounds. He explained that one of the men had something colorful on, like a scarf or bandanna.
Jefferson Parish Deputy Curtis Matthews testified that, on November 27, 2000, he was proceeding northbound on Arnoult Road when he observed a vehicle traveling at a high rate of speed cross in front of him two blocks ahead. He also saw that the vehicle's trunk was open and an object, which he later identified as a pressure washer with a price tag reading $499.00 on it, was hanging out of the trunk.
To further investigate, Deputy Matthews drove his police car to the corner of Burns and Shrewsbury. The vehicle that he perceived as suspicious proceeded toward him south on Shrewsbury Road. As the vehicle approached Deputy Matthews, he "fixed in on the driver." Deputy Matthews explained that, as the vehicle was passing him, he observed the driver intently for one or two seconds, but not the passenger. After the vehicle passed him, Deputy Matthews followed south on Shrewsbury and attempted to stop the vehicle by activating his overhead lights and sirens, but the driver did not stop.
Deputy Matthews pursued the vehicle through Jefferson Parish into Orleans Parish. During the chase, which lasted about 12 minutes, he observed the driver disregard numerous stop signs, travel more than 25 miles per hour over the posted speed limit, proceed eastbound on Jefferson Highway in the westbound lanes, jump the median on Jefferson Highway, and force vehicles off of the road on Jefferson Highway. After the vehicle entered Orleans *870 Parish, the driver eluded Deputy Matthews.
New Orleans Police Department Officer Cyril Evans testified that, on November 27, 2000, while returning from testifying in court, he heard a police broadcast that a green Camry was fleeing from Jefferson Parish authorities into Orleans Parish. After he parked his police cruiser in front of the police substation located on South Dorgenois Street and as he walked up the steps, Officer Evans saw a green Camry turn onto South Dorgenois and park directly across the street from the substation. Officer Evans observed that the license plate number of the green Camry that had just parked matched the broadcasted plate number of the fleeing green Camry.
After assistance arrived, the officers approached defendant, who was the only individual in the vehicle. In response to an inquiry from Officer Evans, the driver stated that "he had had the car all day." At that point, Officer Evans detained the driver and notified the Jefferson Parish Sheriff's Office of the detention.
When Deputy Matthews was advised that the New Orleans Police Department had stopped the vehicle on Dorgenois Street, he proceeded to that location, walked up to the police car and immediately identified the suspect sitting in the backseat of the police cruiser as the driver of the vehicle he had been pursuing. He testified that he recognized the man's face. Further, he recognized the black hat and a green shirt that the man was wearing, which were just like those worn by the driver of the fleeing vehicle.
Deputy Matthews also did an inventory check of the vehicle and removed bolt cutters, a pry tool, and wire snaps from the trunk, which defendant stated belonged to him. Officer Evans observed the deputy remove wire snips, bolt cutters, and a crowbar from the trunk, and he testified that the trunk smelled like gasoline.
Melanie Goodyear, the loss control manager for Enterprise Rent-A-Car, testified that Nathaniel Gibbs rented a green Toyota Camry, license plate number A558458, from Enterprise. She testified that the rental contract began on November 16, 2000.
Defendant testified that he had been previously convicted of attempted armed robbery, distribution of heroin, and several counts of theft and forgery. He explained that he installed floors for a living, but, to earn extra money, he rented cars and leased them to people by the hour or by the day during events like the Bayou Classic.
Defendant testified that, in November of 2000, he rented a car from Enterprise and leased it to "Linda Smith or Smothers." Defendant told "Linda" he would pick up the car in front of the barroom on Dorgenois Street on November 27, 2000 at noon. Defendant testified that, on November 27, 2000, he rode with a guy from work to the barroom on Dorgenois Street. At 11:30 a.m., Linda came into the bar and brought him the keys to the car. When defendant walked outside the barroom, the police handcuffed him and put him in the back of a police car. Defendant saw the officers remove his metal snips, a crowbar, and bolt cutters from the vehicle. He explained that he used those tools to install floors.
Defendant testified that he was not driving the Camry during the high speed chase from Metairie to New Orleans, that he was not a passenger in the car during the chase, and that he had never been to Retif Oil. He admitted that he had not attempted to contact "Linda" to appear as a witness at trial.
*871 Cleveland Pate and Deputies Don Grossnickle, Gregory L. Duncan, and Jerry Rachel also testified for the defense. Cleveland Pate, who was incarcerated on unrelated charges at the time of trial, testified that he had prior felony convictions. He stated that he has known defendant all of his life because they had been raised in the same neighborhood. He explained that, on November 27, 2000, he and defendant and three or four other people walked out of Rose's Tavern, a bar on Dorgenois Street, and nine or ten policemen went straight up to defendant and arrested him.
Deputy Grossnickle testified that he responded to a call regarding a car chase; however, he never saw the chase, nor did he receive any calls to assist people who were on the side of the road as a result of the chase. Deputy Duncan testified that he heard a call over the radio involving a deputy who was following a vehicle; however, he never came into contact with the suspect vehicle, nor did he encounter any cars on the side of the road that needed assistance.
Deputy Rachel testified that he arrived at Retif Oil at 12:35 p.m. to investigate the burglary. While preparing his report, he received a call regarding a fleeing vehicle. Deputy Rachel began pursuing the vehicle, but lost sight of it. He did not observe any injured people or vehicles off to the side of the road. During his investigation, Deputy Rachel learned from Mr. Folse that the suspect was a black male between the ages of 19 and 25, weighed 150 to 160 pounds, and was approximately 5'10" to 6' tall. After hearing the testimony, the jury found defendant guilty as charged.
In his sole assignment of error, defendant argues that the trial court erred in denying his motion for a new trial[2] because there was insufficient evidence to support the conviction as to the identity of the perpetrator. The State responds that the evidence was sufficient to prove that defendant committed the instant offenses.
The standard for appellate review of the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560.
When circumstantial evidence is used to prove the commission of the offense, La. R.S. 15:438 mandates that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypotheses of innocence." The requirement of La. R.S. 15:438 does not establish a standard separate from the Jackson standard, but rather provides a helpful methodology for determining the existence of reasonable doubt. Ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Guccione, 96-1049 (La.App. 5 Cir. 4/29/97), 694 So.2d 1060, 1067, writs denied, 97-2151 (La.3/13/98), 712 So.2d 869 and 01-2825 (La.8/16/02), 822 So.2d 613.
Defendant was convicted of simple burglary and aggravated flight from an officer, *872 violations of La. R.S. 14:62 and La. R.S. 14:108.1, respectively. La. R.S. 14:62 defines simple burglary as the unauthorized entering of any dwelling, vehicle, watercraft, or other structure, movable or immovable, or any cemetery, with the intent to commit a felony or any theft therein. La. R.S. 14:108.1 provides in pertinent part:
A. No driver of a motor vehicle shall intentionally refuse to bring a vehicle to a stop knowing that he has been given a visual and audible signal to stop by a police officer when the officer has reasonable grounds to believe that the driver has committed an offense. The signal shall be given by an emergency light and a siren on a vehicle marked as a police vehicle.
....
C. Aggravated flight from an officer is the intentional refusal of a driver to bring a vehicle to a stop, under circumstances wherein human life is endangered, knowing that he has been given a visual and audible signal to stop by a police officer when the officer has reasonable grounds to believe that the driver has committed an offense. The signal shall be given by an emergency light and a siren on a vehicle marked as a police vehicle.
D. Circumstances wherein human life is endangered shall be any situation where the operator of the fleeing vehicle commits at least two of the following acts:
(1) Leaves the roadway or forces another vehicle to leave the roadway.
(2) Collides with another vehicle.
(3) Exceeds the posted speed limit by at least twenty-five miles per hour.
(4) Travels against the flow of traffic.
Finally, La. R.S. 14:24 defines principals as all persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime.
In addition to proving the statutory elements of the charged offense at trial, the State is required to prove the identity of the perpetrator. Where the key issue is identification, the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Vasquez, 98-898 (La.App. 5 Cir. 2/10/99), 729 So.2d 65, 69.
On appeal, defendant does not argue that the State failed to establish any of the essential statutory elements of his convictions for simple burglary and aggravated flight from an officer. Rather, defendant contends that the State failed to prove beyond a reasonable doubt his identity as the offender.
Defendant contends that the evidence was insufficient to prove his identity because: (1) Deputy Matthews only viewed defendant for one or two seconds in the midday sun as the car sped past him; (2) Deputy Matthews did not broadcast a description of the driver; (3) the only evidence implicating defendant was Deputy Matthews' suspect identification; (4) the identification was prejudicial, in that Deputy Matthews was told that officers had apprehended a suspect, and that he should come make an identification, and defendant was handcuffed in the back of the police car when he was identified; (5) defendant was 48 years old, over 6' tall, and weighed over 200 pounds at the time of the offense; however, Mr. Folse described the suspect as 19 to 25 years old, 5'10" to 6' tall, and 150 to 160 pounds; and (6) Deputy Matthews' identification was suspect because *873 he could not provide a description of the passenger who was nearer to him as the car sped by.
In his strongest argument, defendant asserts that the identification procedure was prejudicial because Deputy Matthews was told that officers had apprehended a suspect and that he should come make an identification. He further asserts that the identification procedure was prejudicial because he was handcuffed in the back of a police car when he was identified.
In Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), the United States Supreme Court set forth five factors to consider in determining if an identification is reliable: 1) the opportunity of the witness to view the criminal at the time of the crime; 2) the witness' degree of attention; 3) the accuracy of the prior description of the criminal; 4) the level of certainty demonstrated at the confrontation; and, 5) the time between the crime and the confrontation.
One-on-one identifications, known as "show-up" identifications, are not favored; however, under certain circumstances, they are admissible at trial. State v. Jackson, 96-661 (La.App. 5 Cir. 4/9/97), 694 So.2d 440, 447, writs denied, 97-1050 (La.10/13/97), 703 So.2d 609 and 97-1255 (La. 10/13/97), 703 So.2d 612. Such identifications have been found to be admissible when the identification occurred in close proximity to the time of the offense and the suspect is presented for immediate identification. State v. Robinson, 404 So.2d 907, 909-910 (La.1981). Such a process assures reliability and fosters prompt release of innocent suspects. Id.
In this case, defendant has failed to prove there was a substantial likelihood of misidentification as a result of the identification procedure even though the "show-up" identification did focus on defendant. The State negated the likelihood of misidentification by presenting evidence that Deputy Matthews had the opportunity to get a good look at the suspect when the suspect drove past him immediately before the chase ensued. Deputy Matthews testified that, at that point, he was watching and waiting for the vehicle that had been driving nearby at a high rate of speed. He specifically stated that he "focused in" on the driver to the extent that he virtually ignored the passenger. He also described the shirt and hat worn by the driver. Further, Deputy Matthews' identification of defendant occurred only one hour and forty minutes after Deputy Matthews first viewed the suspect. Additionally, according to Officer Evans, Deputy Matthews unequivocally identified defendant as the suspect shortly after the crime occurred. Finally, Deputy Matthews unequivocally identified the defendant at trial. We find that the State's evidence sufficiently satisfied the Manson factors. Based on the foregoing, we find that there was not a substantial likelihood of misidentification with regard to the one-on-one identification procedure.
Moreover, we find no merit in defendant's remaining contentions regarding the evidence presented regarding his identity as the perpetrator. At trial, the State presented evidence that, on November 27, 2000, shortly before noon, Mr. Folse saw an unauthorized dark green, small to medium-sized car outside of the Retif Oil warehouse on Bloomfield Street in Metairie. As Folse approached, the vehicle sped away from Retif Oil with a pressure washer in the trunk. Folse saw that the driver of the vehicle was black and that the last number on the vehicle's license plate was 8.
The State also presented Mr. Castelin, who, on November 27, 2000, observed a green car driven by a black man backing *874 out of Retif Oil's yard into oncoming traffic. He saw men running after the car yelling that the occupants had stolen something so he pursued the car. At 11:55 a.m., Castelin called 911 and reported that he was following a green car with license plate number A558458.
The State further presented Deputy Matthews, who observed a dark green vehicle traveling at a high rate of speed with the trunk open and a pressure washer hanging out of the trunk. He pursued the vehicle through Jefferson and Orleans Parishes, but eventually lost sight of it.
The State also presented testimony from Officer Evans, who heard a broadcast regarding a green Camry that was fleeing Jefferson Parish authorities and entering Orleans Parish. He subsequently saw a green Camry, with a license plate number matching that of the fleeing vehicle, turn onto South Dorgenois Street and park directly across the street from the substation.
Deputy Matthews positively identified defendant at the scene of his detention by New Orleans Police officers. He also retrieved metal snips, a crowbar, and bolt cutters from the trunk, which defendant stated belonged to him. Finally, Melanie Goodyear testified that defendant rented a green Camry with license plate number A558458 from Enterprise Rent-A-Car on November 16, 2000.
Although defendant testified that he neither burglarized Retif Oil nor drove the green Camry during the high speed chase, his testimony was contradicted by Officer Evans who testified that defendant told him that he was the operator of the car, and that he had had the car all day. After hearing all this testimony, the jury chose to accept the testimony of the State's witnesses and reject defendant's testimony.
The trier of fact shall evaluate the witnesses' credibility, and when faced with a conflict in testimony, is free to accept or reject, in whole or in part, the testimony of any witness. State v. Rivers, 01-1251 (La.App. 5 Cir. 4/10/02), 817 So.2d 216, 219, writ denied, 02-1156 (La.11/22/02), 829 So.2d 1035. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness' testimony, if believed by the trier of fact, is sufficient support for the requisite factual findings. State v. Rivers, 817 So.2d at 219. It is the fact finder's function to determine the weight of the evidence bearing on defendant's identification. It is not the appellate court's function to reevaluate the credibility choices by the fact finder. State v. Spencer, 93-571 (La.App. 5 Cir. 1/25/94), 631 So.2d 1363, 1370, writ denied, 94-488 (La.2/3/95), 649 So.2d 400.
Consequently, after viewing the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have found, beyond a reasonable doubt, that defendant was the perpetrator of the crimes. Accordingly, we find defendant's assignment of error lacks merit.
Finally, we have reviewed the record for errors patent pursuant to La.C.Cr.P. art. 920 and found none requiring remand. Based on the foregoing, we affirm defendant's convictions and sentences.
AFFIRMED.
NOTES
[1] Defendant's motion for appeal was premature when it was filed after conviction and sentence, but before the sentence as a multiple offender. However, this procedural defect was cured by the subsequent re-sentence. State v. Balser, 96-443 (La.App. 5 Cir. 11/14/96), 694 So.2d 351, 354.
[2] On a motion for new trial, the trial court may assess only the weight of the evidence. The question of sufficiency of evidence should be raised by motion for post-verdict judgment of acquittal. La.C.Cr.P. art. 821; State v. Ellis, 95-1005 (La.App. 5 Cir. 3/26/96), 672 So.2d 1007, 1008 (citation omitted). Since the subject of this assignment of error is really sufficiency of the evidence, which is a constitutional issue, we will treat this assigned error as though it had been properly framed under La.C.Cr.P. art. 821. State v. Ellis, supra.